## SAPULPA PETROLEUM CO. v. McCRAY.

No. 19077. Opinion Filed March 19, 1929.

Rehearing Denied May 21, 1929.

See, also, McCray v. Sapulpa Petroleum Co., 102 Okla. 108, 226 Pac. 875.

Silverman & Rosenstein, for plaintiff in error.

F. E. Riddle and E. B. Hughes, for defendant in error.

RILEY, J. This is a second appeal in this cause. See McCray v. Sapulpa Pet. Co. et al., 102 Okla. 108, 226 Pac. 875, and consolidated cases.

McCray sought specific performance for the conveyance of two oil and gas leases known as the Timothy & Cedar leases. He was in possession and had developed the same. Prior to August, 1919, McCray, Birch C. Burnett, and Bates B. Burnett each owned one-third of the stock in the Sapulpa Petroleum Company as a Delaware corporation. In the year 1919, said owners of said stock decided to incorporate the Cushing Petroleum Company as a Delaware corporation. A portion of the stock of the new corporation was delivered to one Herd, a promoter. Six hundred thousand dollars of debenture notes were issued by the new corporation. McCray and the Burnetts delivered all but one share each of the Sapulpa Petroleum Corporation stock to Herd, who pledged the stock to the Empire Trust Company to secure the debenture bonds of the Cushing Petroleum Company. McCray, on September 25, 1919, contracted with one Kelly to sell to Kelly all of his stock in the Cushing Petroleum Company for the sum of $250,000. Twenty-five thousand dollars in cash was paid. According to McCray this contract was for the benefit of Herd and the Burnetts. Twenty-five thousand dollars additional was paid, but no more, whereupon McCray demanded of Herd and the Burnetts his stock under theory of an option, without avail; the Burnetts contending the contract was a sale and they simply owed McCray the balance.

A settlement between McCray, the Burnetts, and Herd was negotiated for $153,967.-13, but the Burnetts and Herd were unable to pay cash, but agreed to deliver McCray the two leases owned by the Sapulpa Petroleum Company above mentioned. That was accepted by the parties and assignment of the leases was to be authorized by the Cushing Petroleum Company and the Sapulpa Petroleum Company. McCray went into possession. Birch C. Burnett wired McCray that the resolution had passed the board of directors of the Cushing Petroleum Company and mailed a purported resolution to McCray, but such was false. Birch C. Burnett then agreed to arrange a meeting of the Sapulpa Petroleum Company and pass the necessary resolution for assignment of the leases to McCray. The Burnetts and McCray met as directors. Bates Burnett left, but said he would return and complete the transaction, but they never completed the same, thereafter refusing to do so. Judgment was for defendants on specific performance, but allowing McCray $11,552.06 for expenditures in developing and operating the leases. It was affirmed. Mandate issued in June, 1924, but prior to final determination of the cause in this court, McCray sought relief against the Cushing Petroleum Company, the Delaware corporation, in the United States District Court of the Eastern District of Oklahoma. The federal court granted injunctive relief under the view that McCray was entitled to an interest in said leases as an equitable mortgagee, but the Circuit Court of Appeals reversed that holding of the federal district court, and that litigation continued until 1925. Sapulpa Pet. Co. v McCray. 4 Fed. (2nd Series) 645; McCray, v. Sapulpa Pet. Co., 21 Fed. (2nd Series) 953; Certiorari—W. S. McCray v. Sapulpa Pet. Co., 72 L. Ed. (U. S.) 734. Subsequently there was an accounting. A referee was appointed by the district court of Creek county. It is the

latter judgment in accounting now before us on appeal. The issue is that of good faith. If in good faith. McCray is not a willful trespasser, and consequently is entitled to proper cost of development; otherwise he takes nothing.

The referee found that McCray's entry on the leases was in good faith, under belief that the contract for conveyance of title would be carried out; that McCray's action for specific performance was in good faith, but the referee found that McCray's good faith ended when the district court held against him. However, the referee found "that no question is raised in this accounting that McCray did not operate the leases in an efficient and economical manner." No exception, by plaintiff in error, is made to the referee's findings of (1) good faith at time of McCray's entry into possession of the leases, or (2) to the economical and efficient operation of the leases by McCray during his possession. Defendant in error, McCray, did except to the finding that he was not entitled to deduct from the profits the cost of development and operation for the entire time of the litigation. The trial court held in accord with defendant in error's exception and against the referee's finding to that extent and in the view that by reason of good faith the proceeds from the lease under McCray's management should be offset by expenditures incurred in the operation.

The question of good faith is by plaintiff in error limited to the time after the judgment of the district court in 1922. They do not question McCray's good faith prior thereto. (P. 52, plaintiff in error's brief.)

It is the gist of the contention that after judgment of the district court, nothwithstanding the leases were first possessed in good faith, liability attached upon the supersedeas bond given, for the entire gross proceeds arising from the lease and irrespective of cost of development and operation; that as a matter of law McCray was converted into a trespasser ipso facto, without right of appeal from the judgment denying him specific performance and regardless of advice of reputable attorneys. In other words, that McCray appealed at his peril. Probst v. Bearman. 76 Okla. 71, 183 Pac. 886; Texas Co. v. Pettit, 107 Okla. 243, 220 Pac. 956, and many others are cited. Therein the party charged at no time was admitted to be a good faith possessor. No case is cited, and we know of none, where the party possessing in good faith. operating economically and efficiently, was converted into a willful trespasser or a possessor mala

fide. All the cases hold that a willful trespasser, possessing against the will and without the consent of the true owner, holds at his peril and is liable for the gross profit. Such is not this case. Plaintiff in error admits no case as at bar can be found. He says in his brief:

"Before we close on this question, we desire to reiterate that none of the cases discussed, nor any that we have been able to find, deal with allowance of expenses to trespassers, innocent or otherwise, after adjudication of title."

The issue of good faith is one of fact as presented here. Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through forms or techicalities of the law, together with an absence of all information or belief of facts which would render the transaction unconscientious. See section 3536, C. O. S. 1921.

It is the opposite of fraud, and its nonexistence must be established by proof. McConnelly v. Street, 17 Ill. (7 Peck.) 253; Canal Bank v. Hudson, 111 U. S. 66, 4 S. Ct. 303, 28 L. Ed. 354; Searl v. Sch. Dist. No. 2, 133 U. S. 553, 10 S. Ct. 374, 33 L. Ed. 740.

The fact that a purchaser may err in judgment is not enough to impeach his good faith, but it exists when the purchase is made with an honest purpose, though the real title is not acquired. Winter v. Haines, 84 Ill. 585.

Color of title is sufficient; the expression, "some deed or contract," is frequently used in statutes and decisions; the use of such words negatives the idea that true title is required and indicates color of title is sufficient to establish good faith. Indeed, if true title were required, there would be no necessity for equitable or statutory relief on the grounds of good faith, for there would be no dispossession. Hicks v. Blakemon, 74 Miss. 459, 21 So. 7, 400. See, also, Good v. First Nat. Bk., 88 Okla. 110, 211 Pac. 1051; Mayerhoff v. Wortman, 92 Okla. 66, 218 Pac. 842; In re Assessment of First Nat. Bk., 93 Okla. 233, 220 Pac. 909; Etenburn v. Neary, 77 Okla. 69, 186 Pac. 457; Cressler v. Brown, 79 Okla. 170, 192 Pac. 417; Ellison v. Hodges, 71 Okla. 16, 174 Pac. 1089; Bruner v. Beardon, 80 Okla. 154, 195 Pac. 117; Cromwell v. Sac Co., 94 U. S. 351, 24 L. Ed. 195.

In Barnes v. Winona Oil Co., 83 Okla. 253, 200 Pac. 985, it was held:

"A person who in good faith enters into peaceable possession of land upon which he

owns an oil and gas lease and produces oil and gas therefrom, and thereafter said lease is declared void and invalid, the measure of damages to the landlord in an action for an accounting for the oil and gas produced from said premises by the lessee is the value of the oil at the surface or in pipeline or tanks, whatever the same may be, less the reasonable cost of producing the same." U. S. v. Gentry, 119 Fed. 70; U. S. v. Homestake Min. Co., 117 Fed. 481 (concerning action on advice of reputable counsel).

The trial court evidently found good faith as a fact. Good faith in initial possession, efficient and economical development and management remain undisputed. We hold the judgment below was not clearly against the weight of the evidence, consequently we are without power to reverse the judgment of the trial court where the deductions for cost of development and expenses were allowed. The judgment is affirmed.

LESTER, V. C. J., and CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur.

HUNT, J., not participating.