2003 OK 73

**Thurbert A. CAMPBELL,**
**Plaintiff/Appellee/Counter–Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 01 OF OKMULGEE COUNTY, State of Oklahoma, a/k/a Okmulgee Public Schools, Defendant/Appellant/Counter–Appellee.**

**No. 97,513.**

Supreme Court of Oklahoma.

Sept. 16, 2003.

Richard B. Wilkinson, Oklahoma Education Association, Oklahoma City, Oklahoma, for Plaintiff/Appellee/Counter–Appellant.

J. Douglas Mann and William A. Caldwell, Rosenstein, Fist & Ringold, Tulsa, Oklahoma, for Defendant/Appellant/Counter–Appellee.[1]

OPALA, V.C.J.

¶ 1 The dispositive questions tendered on certiorari are (1) Does the contract for the 2000–2001 school year between the Okmulgee Public Schools and its teachers entitle plaintiff, who retired at the end of the school year, to be reimbursed for all the unused sick leave days he accumulated in excess of one hun-

dred twenty (120) days? and if so (2) Is defendant liable for liquidated damages for its refusal to fully reimburse plaintiff for all the excess, unused sick leave he had accumulated? We answer the first question in the affirmative and the second in the negative.

I

## ANATOMY OF LITIGATION

¶ 2 The Okmulgee Public Schools (defendant) and the Okmulgee Association of Classroom Teachers entered into an agreement effective the first day of the 2000–2001 school year governing their mutual rights and obligations (the Agreement). Among its provisions are two paragraphs concerning the disposition upon retirement of an employee's accumulated, unused sick leave. The first states:

"Sick leave days may be cumulative up to a maximum total of one hundred twenty (120) days.... Any unused sick leave days in excess of the one hundred twenty (120) days is irrevocably transferred to the individual employees (sic) sick leave retirement bank and may be used for retirement purposes only."

Several paragraphs later, the Agreement states:

"A teacher who has his/her last ten consecutive years of service in the Okmulgee Public Schools prior to retirement will be paid for all unused sick leave above one hundred twenty (120) days at the teacher's per diem rate when he/she retires from the school system."

¶ 3 In addition to the two quoted paragraphs of the Agreement, the disposition of unused sick leave accumulated by a retiring employee is also addressed in a policy adopted by the Board of Education in 1998. That policy states:

"Employees of [the] Okmulgee School District upon retirement will be compensated at their per diem rate for any and all unused sick leave above one hundred twenty days (120). ADOPTED: May 12, 1998."

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari paperwork filed in this court.

¶4 Thurbert A. Campbell (plaintiff) taught in the Okmulgee Public Schools for more than ten (10) consecutive years before retiring at the end of the 2000–2001 school year. During his tenure as a teacher, plaintiff accumulated one hundred sixty-five and one-half (165½) days of unused sick leave. He informed defendant in March 2001 that based on the terms of the Agreement he expected to be reimbursed at his per diem rate for forty-five and one-half (45½) of those days. The school district conceded that he was owed for eighteen (18) days, but rejected his claim for the other twenty-seven and one-half (27½) days. Defendant notified plaintiff in writing of its decision and paid him at the end of the school year for the eighteen (18) days it conceded he was owed.

¶5 Plaintiff then brought this action in which he seeks judgment for the monetary value of the twenty-seven and one-half (27½) days of accumulated, unused sick leave withheld by defendant and for liquidated damages for defendant's failure to pay wages when due as authorized by the provisions of 40 O.S.2001 § 165.3(B).[2] Defendant *denies* that plaintiff is entitled to (1) payment for any additional days of unused sick-leave and (2) to liquidated damages even if he prevails in his reimbursement claim.

¶6 Plaintiff and defendant both moved for summary adjudication. The trial court gave judgment to plaintiff on the reimbursement claim and gave judgment to defendant on the liquidated damages claim. Both parties appealed. The Court of Civil Appeals, Division IV, affirmed the judgment for plaintiff, re-

versed that for defendant (on the liquidated damages claim), and remanded the cause with directions to enter judgment for plaintiff on the latter claim as well.

¶7 We granted certiorari on defendant's petition and now vacate the opinion of the Court of Civil Appeals and affirm the trial court's judgment.

## II

### STANDARD OF REVIEW ON SUMMARY PROCESS

■ ¶8 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [3]—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process.[4] Summary process is applied where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute and where the law favors the movant's claim or liability-defeating defense. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered by the parties in acceptable form.[5] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary adjudication.[6]

■ ¶9 Summary relief issues stand before us for *de novo* examination.[7] All facts

---

2. *See infra* note 19 for the provisions of 40 O.S. 2001 § 165.3.

3. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶15, 782 P.2d 924, 926–27.

4. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the tendered proof in the record reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK

113, ¶7, 980 P.2d 109, 112; *Hulsey v. Mid-America Preferred Ins. Co.*, 1989 OK 107, ¶8, n. 15, 777 P.2d 932, 936, n. 15.

5. *Polymer, supra* note 4 at ¶8, at 113.

6. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶11, 909 P.2d 776, 781.

7. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is thus reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081,1083 ("Issues of law are reviewable by a de novo standard and an appellate court claims for itself plenary, indepen-

and inferences must be viewed in the light most favorable to the non-movant.[8] Just as *nisi prius* courts are called upon to do, so also appellate tribunals bear an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant.[9] Only if the court should conclude that there is no material fact in dispute and that the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor.[10]

## III

### THE AGREEMENT ENTITLES PLAINTIFF TO PAYMENT FOR ALL ACCUMULATED, UNUSED SICK LEAVE IN EXCESS OF ONE HUNDRED AND TWENTY DAYS

■ ¶ 10 Two paragraphs of Article 21 of the Agreement address the disposition of an employee's accumulated, unused sick leave upon retirement. The first states:

"Sick leave days may be cumulative up to a maximum total of one hundred twenty (120) days.... Any unused sick leave days in excess of the one hundred twenty (120) days is irrevocably transferred to the individual employees (sic) sick leave retirement bank and may be used for retirement purposes only." (the retirement bank clause)

Several paragraphs later, the Agreement states:

"A teacher who has his/her last ten consecutive years of service in the Okmulgee Public Schools prior to retirement will be paid for all unused sick leave above one hundred twenty (120) days at the teacher's

per diem rate when he/she retires from the school system." (the reimbursement clause)

¶ 11 There is no dispute (1) that plaintiff spent the last ten (10) consecutive years in the service of the Okmulgee Public Schools and (2) that he accumulated a total of one hundred sixty-five and one-half (165½) days of unused sick leave prior to the date of his retirement. Plaintiff relies on the reimbursement clause of the Agreement, which he asserts clearly and unambiguously entitles him to be paid for all the sick leave he accumulated in excess of one hundred twenty (120) days.

¶ 12 Defendant argues that both the retirement bank clause and the reimbursement clause apply to plaintiff and that one directly contradicts the other. Defendant urges that the court can and must reconcile the conflicting provisions and that the key to that endeavor is to be found in the sick leave reimbursement policy adopted by the Board in 1998. That policy states:

"Employees of [the] Okmulgee School District upon retirement will be compensated at their per diem rate for any and all unused sick leave above one hundred twenty days (120). ADOPTED: May 12, 1998." (the sick leave reimbursement policy)

¶ 13 Defendant argues that prior to the adoption of the sick leave reimbursement policy, the disposition of unused sick leave was governed solely by the (then extant version of the) retirement bank clause of the Agreement, which controlled (and continues to control) the disposition of all unused sick leave days *accumulated before the sick leave reimbursement policy was adopted.*[11] Under

---

**8.** *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051,1053.

**9.** *Spirgis v. Circle K Stores, Inc.,* 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

**10.** It is not the purpose of summary process to substitute a trial by affidavit for one by jury, but rather to afford a method of summarily terminating a case (or eliminating from trial some of its

issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.,* 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly,* 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

**11.** Defendant never explicitly states, nor is there any evidentiary material in the record tending to establish, that any contract prior to the 2000–2001 Agreement included the retirement bank clause or a similar clause. It is nevertheless clearly implied by defendant's argument, which only makes sense if the retirement bank (or a similar) provision controlled the disposition of

that provision all sick leave days in excess of one hundred twenty (120) days were *"irrevocably"* transferred to the individual employee's retirement bank to be used for retirement purposes only.[12] Defendant contends that reimbursement of unused sick leave is not a retirement purpose, that phrase being limited to the credit toward retirement provided by the terms of 70 O.S.2001 § 17–116.2(H).

¶14 In 1998 defendant decided that it would offer teachers payment for some of their unused sick leave in excess of one hundred twenty (120) days in place of the Agreement's negotiated arrangement for the transfer of all of those days to the employee's retirement bank. Accordingly, the school district adopted the sick leave reimbursement policy on 12 May 1998. According to defendant, the retirement bank clause of the Agreement and the sick leave reimbursement policy work together in the following way. Any sick leave days accumulated *before* the adoption of the policy, *having been irrevocably* transferred to the individual employee's retirement bank before the policy was adopted, remain subject to the retirement bank clause of the Agreement and are unavailable for reimbursement purposes. Any unused sick leave days accumulated *after* the policy's adoption can be reimbursed as provided by the policy.

¶15 Turning to the Agreement's reimbursement clause,[13] defendant argues that if that clause is considered alone in relation to the retirement bank clause, the two clauses are irreconcilably in conflict. This is so, defendant contends, because unused sick leave days cannot be both *irrevocably* transferred to a retirement bank for the purpose of credit toward retirement and thereafter still be retrievable for reimbursement. *In short, for the retirement bank clause to mean what it says, the reimbursement clause cannot literally mean what it says.* Defendant then argues that the repugnancy can be cured only by resort to the sick leave reimbursement policy. Defendant proposes that the reimbursement clause should simply be treated as a contractual adaptation of the sick leave reimbursement policy applicable only to sick leave accumulated after 12 May 1998. In this manner, defendant contends, both clauses of the Agreement are given effect without seriously violating the literal meaning of either.

¶16 Whether a contract is ambiguous and hence requires extrinsic evidence for its clarification is a matter of law for the court to resolve.[14] There is no need to resort to extrinsic evidence to ascertain a contract's meaning where its language is clear and explicit.[15] When a contract is reduced to writing, the parties' intent is to be ascertained from the writing alone whenever possible.[16] Where a contract contains clauses

---

sick leave before the Board adopted the sick leave reimbursement policy. For purposes of fairly articulating the school district's reasoning in refusing to reimburse plaintiff for all of his unused sick leave in excess of one hundred twenty (120) days, we will assume that the retirement bank provision appeared in contracts between the school district and its teachers before 1998. We do so only for the purpose of outlining defendant's position and because we do not consider the assumed fact to be material to the resolution of this case. Were it material, we could not render judgment on summary process. Because we discern no ambiguity or irreconcilable contradiction in the two clauses of the 2000–2001 Agreement at issue, it is in the final analysis immaterial whether the retirement bank clause appeared or did not appear in earlier contracts.

12. The Agreement does not define retirement bank (or otherwise explain how an individual employee's retirement bank operates) nor does the Agreement define retirement purposes.

13. It is unclear from the record whether the reimbursement clause was an addition to the 2000–2001 Agreement or whether it might have appeared in earlier contracts as well.

14. *Pitco Production Co. v. Chaparral Energy, Inc.,* 2003 OK 5, ¶12, 63 P.3d 541, 545; *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority,* 1994 OK 20, ¶25, 896 P.2d 503, 514.

15. *Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, ¶17, 757 P.2d 810, 815; *Rucker v. Republic Supply Co.,* 1966 OK 118, ¶6, 415 P.2d 951, 953. *See also* the terms of 15 O.S.2001 § 154, which state:

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

16. *See* the provisions of 15 O.S.2001 § 155, which state:

"When a contract is reduced to writing, the intention of the parties is to be ascertained

seemingly repugnant to each other, the repugnant clauses must be reconciled if it can be done by any reasonable construction.[17]

¶ 17 We perceive no irreconcilable conflict between the contract provisions at issue that requires resort to extrinsic evidence for its clarification or resolution. The school district and the teachers specifically contracted that the Agreement "represents the full and complete agreement between the parties." We will not look beyond the four corners of the Agreement to interpret the contract unless it is absolutely necessary. In this case it is not. The two clauses at issue simply provide nonuniform arrangements for the disposition of unused sick leave depending upon the retiring teacher's tenure with the school district. The retirement bank clause provides the general rule for the disposition of sick leave applicable to all teachers except those who qualify for participation in the reimbursement clause. The reimbursement clause provides more favorable treatment for those teachers who have served in the Okmulgee Public Schools for ten (10) consecutive years prior to retirement. The latter are eligible to receive reimbursement for their unused sick leave.

¶ 18 This interpretation does not conflict with the "irrevocable" nature of the transfer of excess unused sick leave days to the individual employee's retirement bank because nothing in the Agreement precludes reimbursement as a "retirement purpose." That a teacher might accumulate unused sick leave

days with the intent of receiving additional compensation upon retirement is just as clearly a "retirement purpose" as receiving credit for those days.

¶ 19 Finally, the Agreement does not make the distinction defendant posits between days accumulated before 12 May 1998 and those accumulated after that date. If it had been the parties' intent to limit reimbursement in the manner defendant proposes, it would have been a simple matter to do so either by an explicit statement to that effect or by including in the Agreement a reference to the sick leave reimbursement policy.

¶ 20 Plaintiff had at least ten (10) years of consecutive service with the school district on the date of his retirement. He is hence entitled to be paid for "all unused sick leave in excess of one hundred twenty (120) days." That portion of the trial court's judgment is affirmed.

## IV

### PLAINTIFF IS NOT ENTITLED TO LIQUIDATED DAMAGES

¶ 21 Pursuant to the provisions of 40 O.S.2001 § 165.3, an employer who fails to pay all wages [18] owed to an employee when due shall be held liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages per day, up to one-hundred percent (100%) of the unpaid wages.[19] Notwithstanding the provisions of

---

from the writing alone, if possible, subject, however, to the other provisions of this article."

17. *See* the provisions of 15 O.S.2001 § 168, which state:

"Repugnancy in a contract must be reconciled, if possible, by such an interpretation as will give some effect to the repugnant clause, subordinate to the general intent and purposes of the whole contract."

18. Wages are defined in § 40 O.S.2001 § 165.1(4). That provision states:

" 'Wages' means compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due,

or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

19. *See* the provisions of 40 O.S.2001 § 165.3, which state:

A. Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets, at the next regular designated payday established for the pay period in which the work was performed....
B. If an employer fails to pay an employee wages as required under subsection A of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of two percent (2%) of the unpaid wages for each day upon which such failure shall continue after the day upon which payment is required; or in an amount equal to the unpaid wages, whichever is smaller; ...

§ 165.3, if there is a bona fide disagreement as to the amount of wages owed, the employer will not be held liable for liquidated damages if the employer (1) gives written notice to the employee of the amount of wages the employer concedes is owed and (2) pays the employee the undisputed amount.[20] Defendant in this case provided plaintiff with a written statement of the amount it conceded was owed to him and paid him that amount. Hence it can only be held liable for liquidated damages if its refusal to pay him for the additional days of sick leave was not based on a bona fide disagreement as to the amount plaintiff was owed.

¶ 22 The Court of Civil Appeals held that the legislature did not intend for employers to avoid liability for liquidated damages based on a subjective interpretation of the meaning of an employment contract. COCA instead adopted an objective standard and, applying it to the undisputed material facts, held that there was no *objective basis* in the record to support the existence of a bona fide disagreement over the reimbursement of plaintiff's pre–1998 sick leave days.[21] We disagree with the standard applied by the Court of Civil Appeals and hence with its conclusion.

¶ 23 The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent.[22] That intent is to be ascertained from the statute in light of its general purpose and object.[23] Defendant contends that the purpose of § 165.4 is to impose a penalty on an offending employer. We agree. Where as here the plaintiff's actual damages are readily determinable and he (or she) can be fully compensated by the payment of what is owed, there is no reason to consider enhanced damages as compensatory or remedial.

¶ 24 In order to justify punishing the employer for failure to pay all wages when due, he (or she) should be to some degree blameworthy for the offending conduct. We hence hold that a bona fide disagreement exists within the meaning of § 165.4 if the employer holds an honest and sincere belief that the wages claimed are not owed.[24]

¶ 25 The undisputed facts in the summary process record not only fail to establish as a

---

20. The pertinent provisions of 40 O.S.2001 § 165.4 state:

"In case of a bona fide disagreement over the amount of wages, the employer shall give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition, within the time required by Sections 165.2 and 165.3 of this title; provided, however, that acceptance by the employee of any payment made hereunder shall not constitute a release as to the balance of his claim. Payment in accordance with this section shall constitute payment for the purposes of complying with Sections 165.2 and 165.3 of this title, if, but only if, there exists a bona fide disagreement over the amount of wages...."

21. Quoting from *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988), the Court of Civil Appeals described the standard as follows:

"The test of a 'bona fide dispute' over an obligation to pay is 'whether there is an objective basis for either a factual or legal dispute as to the validity of [the obligation].' "

22. *George E. Failing Co. v. Watkins*, 2000 OK 76, ¶ 7, 14 P.3d 52, 56; *Patterson v. Beall*, 2000 OK 92, ¶ 18, 19 P.3d 839, 845; *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438, 460; *Jackson v. Mercy Health Center, Inc.*, 1993 OK 155, ¶ 11, 864 P.2d 839, 844; *TXO Production Corp., v. Okla. Corp. Comm'n*, 1992 OK 39, ¶ 7, 829 P.2d 964, 968–69.

23. *See* cases cited *supra* note 22.

24. In so holding, we ascribe to "bona fide" the statutory meaning of good faith set forth in the provisions of 25 O.S.2001 § 9, which state:

"Good faith consists in an honest intention to abstain from taking any unconscientious advantage of another, even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious."

*See Myers v. Lashley*, 2002 OK 14, ¶ 20, n. 46, 44 P.3d 553, 563, n. 46; *Sapulpa Petroleum Co. v. McCray*, 1929 OK 129, ¶ 7, 277 P. 589, 590. *See also Ware v. Hylton*, 3 U.S. (3 Dall) 199, 241, 1 L.Ed. 568 (1796) (holding that the 1783 Treaty of Paris allowed plaintiffs, who were British creditors, to recover "bona fide debts" from citizens of Virginia despite a state law canceling those debts; defining bona fide as follows: "Bona fide is a legal technical expression; and the law of Great Britain and this country has annexed a certain idea to it. It is a term used in statutes in England, and in acts of Assembly of all the States, and signifies a thing done really, with a good faith, without fraud, or deceit, or collusion, or trust.")

matter of law that defendant acted without an honest and sincere belief that the wages claimed were not owed, but on the contrary are legally sufficient for summary adjudication of this issue in defendant's favor. The retirement bank clause and the reimbursement clause of the Agreement could be perceived as in conflict if viewed within the context of previous contracts and the sick leave reimbursement policy.[25] The school district did not single out plaintiff to deny him payment for sick leave, but tendered evidentiary material indicating that it consistently calculated sick leave payments in conformity with the board policy and its interpretation of the Agreement. We hence agree with the trial court that judgment on the liquidated damages issue was defendant's due.

V

SUMMARY

¶ 26 The employment contract between defendant and its teachers for the 2000–2001 school year contains two clauses governing the disposition of accumulated, unused sick leave. The clause applicable to plaintiff provides that teachers with at least ten (10) years of consecutive service in the Okmulgee Public Schools shall be reimbursed upon retirement at their per diem rate for any and all days of accumulated, unused sick leave in excess of one hundred twenty (120) days. Plaintiff worked for the school district for at least ten (10) consecutive years and accumulated one hundred sixty-five and one-half (165½) days of unused sick leave. He is hence entitled to reimbursement for forty-five and one-half (45½) days. Defendant has paid plaintiff for eighteen (18) days. We affirm today the trial court's judgment that defendant owes plaintiff the monetary value of the remaining twenty-seven and one-half (27½) days at plaintiff's per diem rate, or $5,614.68. As to plaintiff's claim for liquidated damages, we hold that defendant's refusal to reimburse plaintiff for all the sick leave the latter claimed he was owed was based on a

bona fide disagreement. Judgment on that claim was hence defendant's due.

¶ 27 **THE COURT OF CIVIL APPEALS' OPINION IS VACATED; THE TRIAL COURT'S JUDGMENT IS AFFIRMED.**

¶ 28 WATT, C.J., and LAVENDER, HARGRAVE, KAUGER, SUMMERS, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 29 HODGES, J., dissents.

---

**25.** Conceding that the two clauses in the contract *may be perceived* as in conflict does not discredit

today's holding that in the context of this litigation they should not be so viewed.