OSCN Found Document:Special Energy Corporation, Stillwater, Mississippi, LLC et al. v Territory Resources, LLC et al.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 Special Energy Corporation, Stillwater, Mississippi, LLC et al. v Territory Resources, LLC et al.
2025 OK CIV APP 14
Case Number: 121267
Decided: 10/28/2024
Mandate Issued: 05/22/2025
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2025 OK CIV APP 14, __ P.3d __

 

SPECIAL ENERGY CORPORATION, STILLWATER MISSISSIPPI, LLC and WOODFORD PETROLEUM, LLC, Plaintiffs/Appellants
vs.
TERRITORY RESOURCES, LLC and SUMMIT RESOURCES MANAGEMENT, LLC, Defendants/Appellees

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, TRIAL JUDGE

VACATED AND REMANDED FOR FURTHER PROCEEDINGS

David A. Elder, Matthew W. Brockman, Taylor K. Weder, HARTZOG CONGER CASON, LLP, Oklahoma City, Oklahoma For Plaintiffs/Appellants

Travis P. Brown, Richard L. Rose, Scott R. Verplank, Jr., Lauren M. Brown, MAHAFFEY & GORE, P.C., Oklahoma City, Oklahoma For Defendant/Appellee Territory Resources, LLC

Brian R. Matula, FELLERS, SNIDER, BLANKENSHIP, BAILEY & TIPPENS, P.C., Oklahoma City, Oklahoma For Defendant/Appellee Summit Resources Management, LLC

JOHN F. FISCHER, JUDGE:

¶1 Special Energy Corporation appeals the judgment entered in favor of Territory Resources, LLC and Summit Resources Management, LLC. 

BACKGROUND

¶2 In early 2015, Devon Energy Production Company, L.P., decided to sell oil and gas assets, including oil and gas leases, it owned in Grant County, Oklahoma. The Parties refer to these assets as the Mississippi Lime Package. Prospective purchasers were required to execute a Confidentiality Agreement prior to reviewing Devon's Confidential Information concerning its Mississippi Lime Package assets, defined in the agreements as "the Properties." The Confidential Information included title and land information regarding oil and gas leases owned by Devon and related geological and geophysical information.

¶3 In February and March of 2015, respectively, Special Energy and Territory signed essentially identical Confidentiality Agreements (respectively, the Special Energy Confidentiality Agreement and the Territory Confidentiality Agreement) and were permitted access to Devon's Confidential Information regarding its Mississippi Lime Package assets. Special Energy and Territory agreed in their respective Confidentiality Agreements that they would use the Confidential Information "for the sole purpose" of making "an economic evaluation" of the assets "in order to determine whether . . . to make an offer to acquire" the Properties being offered for sale by Devon (the Transaction).

¶4 The Agreements also provided that if either "decides that it does not wish to proceed in connection with a possible Transaction, [they] shall promptly inform Devon of that decision." A party deciding not to proceed had two options: "(a) promptly deliver to Devon all Confidential Information (and all copies thereof), or (b) promptly destroy all Confidential Information without retaining any copies, summaries or extracts thereof . . . ." Finally, the Agreements provided that "Devon may, without consent of [the other party], assign all of Devon's rights under this agreement to any person with which Devon enters into a definitive Transaction with respect to the Properties."

¶5 After viewing the Confidential Information, Territory decided not to make an offer to purchase any of Devon's Mississippi Lime Package assets. Special Energy, however, decided that it was interested in purchasing the assets. Special Energy and Devon negotiated and then signed a Purchase and Sale Agreement on July 15, 2015, which specified a closing date of July 23, 2015. The Purchase Agreement provides: "however, the effective date of the purchase and sale . . . shall be June 1, 2015 at 12:01 a.m. CST (the "Effective Date")." Pursuant to the Agreement, Special Energy purchased the Mississippi Lime Package assets for $13,000,000 and an associated seismic license fee for another $2,000,000. Included among the assets that Special Energy purchased were the Parrish lease and the Chain lease. These leases were undeveloped but the term of each had not yet expired. These leases were also included in the Confidential Information reviewed by Territory pursuant to the Confidentiality Agreement it had signed with Devon.

¶6 Special Energy filed this action on December 20, 2017, asserting claims including breach of contract, misappropriation of trade secrets, unjust enrichment, constructive trust, and fraud. Special Energy named Territory and Summit as defendants. According to the allegations in Special Energy's petition, Territory did not return or destroy the Confidential Information it received after it decided not to make an offer to purchase the Mississippi Lime Package assets. Instead, Territory used Devon's Confidential Information to obtain a "top lease" of the Parrish and Chain leases in August and December of 2015. Special Energy contends that Territory also conspired with Summit's principal, a former Devon vice-president who had responsibility for the Mississippi Lime Package assets while he was at Devon. Together, according to Special Energy, Territory and Summit identified and then "cherry-picked" the Parrish/Chain leases prospect. Special Energy alleges that Territory instructed its broker to use a different broker to obtain the Parrish and Chain top leases and to not immediately record those leases to avoid public detection and conceal its breach of the Territory Confidentiality Agreement from Special Energy and Devon. After it obtained the Parrish and Chain top leases, Territory assigned an undivided interest in those leases to Summit on an unpromoted basis.

¶7 Special Energy alleges that Territory's use of the information it acquired from access to Devon's Confidential Information to obtain its Parrish and Chain leases constituted a breach of the Territory Confidentiality Agreement. Special Energy also alleges that to conceal this breach, Territory purchased a "highly unusual and almost unheard of" small area of seismic data from Devon that, because of its "very limited scope" would "normally [have] no utility." Special Energy alleges these top leases prevented it from extending or preserving its interest in the Parrish and Chain leases it purchased from Devon. As a result of the interest Territory acquired in the two leases, Special Energy alleges that Territory was able to propose and subsequently drill a successful oil and gas well, the Kylie 1-28, to the harm and detriment of Special Energy.

¶8 The defendants filed answers and counterclaims which sought to quiet their title to the Parrish and Chain leases, arguing that Special Energy's Parrish and Chain leases had expired by their own terms and that the defendants were the rightful owners of the leases. Both defendants subsequently filed motions to dismiss Special Energy's petition. According to a court minute, the district court appears to have granted Summit's motion but determined that Territory's motion, which challenged Special Energy's standing to enforce the Territory Confidentiality Agreement, would proceed as a motion for summary judgment. Special Energy was granted leave to amend. On April 5, 2018, Special Energy filed its Amended Petition adding specific allegations against Summit.

¶9 On January 14, 2022, the defendants filed a combined motion for summary judgment. Among other arguments, the defendants contended that Special Energy had no standing to enforce any breach of the Territory Confidentiality Agreement. Special Energy filed a response in which it asserted additional material facts. These facts were not disputed in the defendants' Reply. Special Energy's undisputed facts include the following: (1) the Territory Confidentiality Agreement covered all of the information disclosed by Devon to Territory; (2) the Territory Confidentiality Agreement prevented Territory from using any of the information disclosed, except to make an economic analysis of the Mississippi Lime Package assets to determine if it wanted to purchase those assets; (3) the Territory Confidentiality Agreement was binding on Territory and inured to the benefit of Devon and "its successors and assigns;" (4) the purpose of the Territory Confidentiality Agreement was to protect the ultimate purchaser of the Mississippi Lime Package assets; (5) not all of the contracts and agreements Devon sold to Special Energy are listed on Exhibit G to the 2015 Purchase Agreement; and (6) pursuant to the 2015 Purchase Agreement, Devon sold to Special Energy "all files, records . . . and documents in Devon's possession or under Devon's control . . . material to the ownership or operation of" the Mississippi Lime Package assets.

¶10 The hearing on the defendants' motion for summary judgment was held on May 18, 2022. At the conclusion of that hearing, the district court announced that it was taking the matter under advisement. The next day, the court entered a new scheduling order which also moved the discovery cutoff date to October 20, 2022.

¶11 However, based on issues raised by the court's questioning during the hearing and while the matter was still under advisement, Special Energy sought leave on June 22, 2022, to supplement its response to the defendants' motion for summary judgment. While maintaining its position that it acquired Devon's rights to the Territory Confidentiality Agreement through the 2015 Purchase Agreement, Special Energy attached to its motion an Assignment "made effective as of 12:01 a.m. . . . June 1, 2015" from Devon to Special Energy of Devon's rights to the Territory Confidentiality Agreement. The Assignment addressed the district court's concern that the June 2015 Purchase Agreement might not have conveyed Devon's interest in the Territory Confidentiality Agreement to Special Energy as part of the sale of the Mississippi Lime Package assets.

¶12 A court minute entered on August 3, 2022, indicates that the district court announced that it was going to grant the defendants' motion for summary judgment in part, deny it as to Special Energy's tort claims, and deny Special Energy's request to supplement its summary judgment response. The court's ruling was memorialized in a Journal Entry filed September 14, 2022. The Journal Entry states: "While the matter [i.e. the defendants' motion for summary judgment] was under advisement, [Special Energy] filed their Motion for Leave to Supplement [Special Energy's] Response to [the defendants'] Motion for Summary Judgment." The court found that: "Once this matter was submitted to the Court, the Record was closed . . . ." The district court denied Special Energy's motion to supplement, finding: "For the Court to essentially re-open the record is not supported by proper procedure or substantive law."

¶13 In the same Journal Entry, the district court granted Territory's motion for summary judgment in part. The court reviewed the Territory and Special Energy Confidentiality Agreements and the July 21, 2015 Purchase Agreement between Special Energy and Devon. The court determined that these agreements were unambiguous and proceeded to interpret the text of the agreements as a matter of law, excluding consideration of Devon's 2022 Assignment to Special Energy of the Territory Confidentiality Agreement and the evidence Special Energy offered to explain the intent of the parties to these agreements.

¶14 The court found that the basis for Special Energy's breach of contract claims was the Territory Confidentiality Agreement. The court ruled that, for two reasons, Special Energy did not have standing to enforce any breach of the Territory Confidentiality Agreement. First, the court determined that the Territory Confidentiality Agreement was excluded from the assets Devon sold to Special Energy when Special Energy purchased the Mississippi Lime Package assets, because it was not listed on Exhibit G to the 2015 Purchase Agreement. Second, the court found that Special Energy agreed in its Confidentiality Agreement that it would "make no claim" to any "right, title or interest" in Devon's Confidential Information disclosed to Special Energy during its economic evaluation of the Mississippi Lime Package assets.

¶15 However, the district court denied the defendants' motion for summary judgment with respect to the counts that were not dependent on the defendants' alleged breach of the Territory Confidentiality Agreement or the defendants' alleged misuse of Devon's Confidential Information. The court's Journal Entry did not address the defendants' counterclaims or their quiet title claim.

¶16 On September 20, 2022, Special Energy filed two motions to reconsider the September 14, 2022 Journal Entry. First, Special Energy sought reconsideration of the district courts' denial of its request to supplement its response to the defendants' motion for summary judgment. Second, Special Energy sought reconsideration of the court's ruling granting partial summary judgment to the defendants with respect to Special Energy's breach of contract claims. The court held a hearing on Special Energy's motions on November 14, 2022. In a minute entered on that date, the district court announced that it was denying Special Energy's motion to reconsider the court's ruling on Special Energy's request to supplement its response to the defendants' motion for summary judgment, but was granting Special Energy leave to amend its motion to reconsider the partial summary judgment in favor of the defendants.

¶17 Special Energy filed its amended motion to reconsider the partial summary judgment on December 5, 2022. In that motion, Special Energy focused on the district court's concern with standing and again attached and relied on Devon's Assignment of the Territory Confidentiality Agreement to Special Energy. The hearing on that motion was held on March 20, 2023, and the court's ruling is memorialized in a Journal Entry filed on March 24, 2023. In that Journal Entry, the court found that the Assignment of the Territory Confidentiality Agreement did not cure Special Energy's lack of standing to enforce any breach of that Confidentiality Agreement because the Assignment was not executed until after Special Energy's amended petition was filed. The court cited Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 328

¶18 Special Energy chose not to amend but dismissed its remaining claims. On the same day, the defendants dismissed their counterclaims and quiet title action. As a result, the September 2022 Journal Entry granting the defendants' motion for partial summary judgment and the March 24, 2023 Journal Entry denying Special Energy's motion to reconsider became final and appealable. Special Energy has appealed both.

PROCEDURAL ISSUES 

¶19 The parties treat Special Energy's September 2022 motions to reconsider as motions for a new trial filed pursuant to 12 O.S.2021 § 65112 O.S.2021 § 653LCR, Inc. v. Linwood Props., 1996 OK 73918 P.2d 1388

¶20 The September 14, 2022 Journal Entry, to which Special Energy's motions to reconsider were addressed, only adjudicated Special Energy's contract claims. It did not resolve Special Energy's tort claims or the defendants' counterclaims. It was an interlocutory ruling which "remained within the trial judge's complete control to modify or alter at any time before judgment." Id. ¶ 11, 918 P.2d at 1393. Absent the district court's direction to enter the September 14, 2022 Journal Entry as a final judgment, it was "subject to revision at any time before the final judgment, decree, or final order adjudicating all the claims and the rights and liabilities of all the parties is filed with the court clerk." 12 O.S.2021 § 994

¶21 Consequently, when entered, the September 14, 2022 Journal Entry was neither final nor appealable. Therefore, Special Energy's motions to reconsider the September 14, 2022 Journal Entry were not section 651 motions for a new trial, because a motion challenging a partial summary adjudication is not a motion for new trial. Linwood, 1996 OK 73request for reconsideration of an intermediate ruling in the case." Id. (emphasis in original).

¶22 As to the disposition of those motions, there is an entry on the case docket for November 14, 2022, reflecting that the court conducted a hearing on Special Energy's motions to reconsider, denied the motion requesting reconsideration of the request to supplement the record, denied the request to reconsider the partial summary adjudication of Special Energy's contract claims, but granted it leave to amend its motion to reconsider the partial summary adjudication of the September 14, 2022 Journal Entry. That ruling does not appear to have been formalized and, therefore, was not appealable. Laubach v. Laubach, 2022 OK 78

¶23 Neither of the district court's journal entries was appealable when entered for the reasons previously discussed. They did become final and appealable when Special Energy dismissed its three remaining claims, and the defendants dismissed their counterclaims. Cf., Guilbeau v. Durant H.M.A., LLC, 2023 OK 80533 P.3d 764

STANDARD OF REVIEW

¶24 We review the district court's response to Special Energy's motions to reconsider for an abuse of discretion. "Prejudgment orders, which affect other intermediate orders, may, of course, be reviewed after judgment under the standard of abused discretion." Linwood, 1996 OK 73See also, Schepp v. Hess, 1989 OK 28770 P.2d 34

¶25 Title 12 O.S.2021 § 2056American Biomedical Grp. v. Techtrol, Inc., 2016 OK 55374 P.3d 820de novo appellate review similar to review of a summary judgment." Progressive Direct Ins. Co. v. Pope, 2022 OK 4507 P.3d 688de novo appellate review of an assignment of error challenging the trial court's legal conclusion." Oil Valley Petroleum, LLC v. Moore, 2023 OK 90536 P.3d 556Tres C, LLC v. Raker Res., LLC, 2023 OK 13532 P.3d 1

ANALYSIS

¶26 Two issues resolve this appeal: did the district court err in denying Special Energy's request to supplement its response to the defendants' motion for summary judgment? Did the district court err in granting the defendants' motion for summary judgment as to Special Energy's breach of contract claims? We answer both in the affirmative.

I. The Request to Supplement Special Energy's Response to Territory's
Motion for Summary Judgment

¶27 The September 14, 2022 Journal Entry denied Special Energy's request to supplement its response to the defendants' motion for summary judgment, by adding Devon's Assignment of the Territory Confidentiality Agreement to Special Energy. The March 24, 2023 Journal Entry reconsidered the denial of that request but reached the same result. The court based its rulings on the conclusion that: "Once this matter was submitted to the Court, the Record was closed . . . . For the Court to essentially re-open the record is not supported by proper procedure or substantive law."

¶28 There was nothing final or immutable about the May 18, 2022 summary adjudication proceeding or the September 14, 2022 Journal Entry that resulted from that proceeding. As discussed, that proceeding resulted in an interlocutory ruling "subject to revision at any time before the final judgment . . . ." 12 O.S.2021 § 994

¶29 Further, Special Energy sought to supplement its response to the defendants' motion for summary judgment while the matter was under advisement and before the district court announced its interlocutory ruling. Supplementation of the summary judgment record would not have unnecessarily delayed the proceedings; the court had already entered a new scheduling order extending the discovery completion date to a point four months after Special Energy filed its request to supplement the record. And, other than an adverse outcome if Special Energy's additional evidence was considered, the defendants have offered no evidence or argument showing any prejudice suffered if Special Energy's request had been granted. 

¶30 Finally, what Special Energy sought to add to its response to the defendants' motion for summary judgment was a material fact relevant to the disposition of the defendants' standing argument. Coates v. Progressive Direct Ins. Co., 2022 OK 45512 P.3d 345Coates, Special Energy was not asking for time to try and find additional evidence to resolve the standing issue raised by the court; that evidence was attached to its motion, and was necessary "for the trial court to intelligently exercise its discretion in granting or denying summary judgment." Id.

¶31 Ultimately, consideration of Devon's Assignment to Special Energy of the Territory Confidentiality Agreement is consistent with the Oklahoma Pleading Code governing this action. The Oklahoma Pleading Code "shall be construed to secure the just, speedy, and inexpensive determination of every action." 12 O.S.2021 § 2001

II. The Partial Summary Judgment

¶32 Our holding that Devon's Assignment of the Territory Confidentiality Agreement to Special Energy should have been considered as part of the summary judgment record does not necessarily require reversal of the judgment in favor of the defendants. In its September 14, 2022 Journal Entry, the district court found that the Special Energy and Territory Confidentiality Agreements and the 2015 Purchase Agreement were unambiguous, and proceeded to interpret those agreements as a matter of law. Based on that determination, the district court concluded: (1) The Territory Confidentiality Agreement was not "conveyed, sold, assigned, or transferred" to Special Energy pursuant to the 2015 Purchase Agreement; and (2) Special Energy was not a third-party beneficiary of the Territory Confidentiality Agreement because it agreed to make no claim to the Confidential Information Devon disclosed to Territory prior to the sale of the Mississippi Lime Package assets.

A. Construction of the 2015 Purchase Agreement

¶33 The district court correctly determined that the 2015 Purchase Agreement "is the controlling agreement between Devon and Special Energy setting forth what was and what was not sold from Devon to Special Energy." The court examined Paragraph 1(h) of the 2015 Purchase Agreement, which states that Devon sold Special Energy "all agreements . . . contracts, and licenses described at Exhibit G . . . ." Because the Territory Confidentiality Agreement was not specifically listed on Exhibit G, the court concluded it was not sold to Special Energy. However, it is clear from the summary judgment record that Exhibit G did not contain an exhaustive list of all the contracts and agreements Devon sold or transferred to Special Energy pursuant to the 2015 Purchase Agreement. Special Energy's undisputed facts Nos. 15 and 16 establish that some of the contracts and agreements that Special Energy purchased, and Devon transferred pursuant to the 2015 Purchase Agreement, were not listed in Exhibit G.

¶34 Further, the district court's construction of Paragraph 1(h) and Exhibit G is inconsistent with two other provisions of the 2015 Purchase Agreement. First, pursuant to Paragraph 1(k), Devon sold to Special Energy all "documents in Devon's possession or under Devon's control" related to the Mississippi Lime Package assets. It is undisputed that at the time of the sale, the Territory Confidentially Agreement was "in Devon's possession or under Devon's control."

¶35 Second, although the Territory Confidentiality Agreement was not specifically listed on Exhibit G as one of the agreements sold, it is also not listed in Paragraph 2 of the 2015 Purchase Agreement as one of the "Excluded Interests" which Devon did not sell. One cannot rely on the absence of the Territory Confidentiality Agreement from Exhibit G and simultaneously ignore the absence of that same contract from the "Excluded Interests" list. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.2021 § 157

¶36 Like an oil and gas lease, a contract for the sale of oil and gas leases is construed "to give effect to the intent of the parties and effectuate the purpose of contract actually made." Oil Valley Petroleum, LLC v. Moore, 2023 OK 90536 P.3d 55615 O.S.2021 § 155

¶37 However, the circumstances of this sale also confirm that conclusion. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." 15 O.S.2021 § 163

¶38 In addition, Devon's undisputed purpose of disclosing the Confidential Information covered by the Special Energy and Territory Confidentiality Agreements was to generate an offer for its Mississippi Lime Package assets. The purchase price Devon could receive, and the value of those assets to a potential purchaser, would be diminished if Devon could not prevent a non-purchaser to whom the Confidential Information had been disclosed from misusing that information. Consequently, Devon had to be able to give the ultimate purchaser of those assets the same ability it had to enforce a breach of the Confidentiality Agreement. For that reason, no doubt, Devon provided that the Territory Confidentiality Agreement would "inure to the benefit of Devon and its . . . assigns." As of June 1, 2015, Special Energy was Devon's assign of the Mississippi Lime Package assets, including the Parrish and Chain leases. Given these circumstances, and our construction of the 2015 Purchase Agreement, it is clear that the Territory Confidentiality Agreement was intended to be and was transferred to Special Energy as part of the 2015 sale.

B. The Third-Party Beneficiary Issue

¶39 The defendants also argued that Devon did not intend for Special Energy to be a third-party beneficiary of the Territory Confidentiality Agreement. As discussed, that Agreement was intended to protect Devon's Confidential Information. According to the defendants, Special Energy disclaimed any interest in Devon's Confidential Information when it signed its own Confidentiality Agreement. The district court agreed, finding that Special Energy "is not a third-party beneficiary or successor of Devon's rights under the Territory [Confidentiality Agreement]; just the opposite is the case as Special Energy agreed in the [Special Energy Confidentiality Agreement] to make no such claims to the right, title or interest to the [Devon] 'Confidential Information.'" That conclusion is not supported by the governing rules of contract interpretation. The rules "to be applied" are set out in Title 15. 15 O.S.2021 § 153

¶40 First, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." 15 O.S.2021 § 158

¶41 Second, the essence of the district court's holding is that the "make no claim" clause in the Special Energy Confidentiality Agreement is inconsistent with the transfer of assets clause in the 2015 Purchase Agreement. Because these two agreements must be construed as one contract, any inconsistency must be resolved if possible. "[C]lauses seemingly repugnant to each other . . . must be reconciled if it can be done by any reasonable construction." Campbell v. Indep. Sch. Dist. No. 01 of Okmulgee Cnty., 2003 OK 7377 P.3d 1034

¶42 The district court's ruling does not account for this second purpose, or the sale of the Confidential Information to the successful bidder even though that party had signed a confidentiality agreement. After execution of the 2015 Purchase Agreement, the "make no claim" clause in the Special Energy Confidentiality Agreement became "subordinate" to the "general intent" clause transferring the Mississippi Lime Package assets to Special Energy, including all of the Confidential Information associated with those assets. 15 O.S.2021 § 166

¶43 Third, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." 15 O.S.2021 § 29Hensley v. State Farm Fire and Cas. Co., 2017 OK 57398 P.3d 11Shebester v. Triple Crown Insurers, 1992 OK 20826 P.2d 603

¶44 Therefore, not only was the Territory Confidentiality Agreement made for the benefit of a potential purchaser of the Mississippi Lime Package assets, but it was also specifically assigned to Special Energy through the 2015 Purchase Agreement. As a result, the defendants were not entitled to judgment as a matter of law with respect to Special Energy's breach of contract claims. Although that conclusion requires reversal of the September 14, 2022 Journal Entry, Special Energy has also appealed the district court's denial of its amended motion to reconsider the court's March 24, 2023 Journal Entry.

III. The March 24, 2023 Journal Entry

¶45 In its amended motion to reconsider, Special Energy argued that it was the proper party to enforce a breach of the Territory Confidentiality Agreement based on the 2015 Purchase Agreement and the Assignment from Devon. That Assignment was first provided to the court in June of 2022 with Special Energy's request to supplement its summary judgment response, and it was also attached to its amended motion to reconsider. In its March 2023 Journal Entry, the district court reaffirmed the rulings from its September 2022 Journal Entry and, in additional findings, again determined that Special Energy did not have standing -- the Assignment did not "cure" Special Energy's lack of standing. The court's Journal Entry states: "Based on the reasoning set forth in Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 328

¶46 The Wells Fargo case involved the standing of a bank to enforce the breach of a negotiable instrument secured by a mortgage. The Supreme Court held: "To commence a foreclosure action in Oklahoma, a plaintiff must demonstrate it has a right to enforce the note and, absent a showing of ownership, the plaintiff lacks standing." Id. ¶ 9, 280 P.3d at 333 (citation omitted). A foreclosure plaintiff must also "demonstrate it became a 'person entitled to enforce' [the negotiable instrument] prior to the filing of the foreclosure proceeding." Id. ¶ 16, 280 P.3d at 335 (emphasis omitted). Based on this reasoning, the district court found that Special Energy did not have standing because it obtained the Assignment in the summer of 2022, "four years after the Amended Petition was filed." The district court determined this fact by questioning Special Energy's counsel during the hearing on the motion to reconsider. Wells Fargo with respect to standing applies. Standing, which "determines whether the person is the proper party to request adjudication of a certain issue," may be raised at any time. Id. ¶ 7, 280 P.3d at 332 (quoting Matter of the Estate of Doan, 1986 OK 15727 P.2d 574Wells Fargo in other respects is misplaced.

¶47 The Wells Fargo Court recognized that there is a "procedure for curing [any standing] defect." Id. n.20, 280 P.3d at 335 (citing HSBC Bank USA v. Lyon, 2012 OK 10276 P.3d 1002

¶48 Further, the Territory Confidentiality Agreement is not a negotiable instrument; it is an ordinary contract with Devon. "Oklahoma has long held that rights under a contract are presumed to be assignable, unless the parties expressly provide otherwise." Beattie v. State ex. rel. Grand River Dam Auth., 2002 OK 341 P.3d 377East Central Okla. Elec. Co-op., Inc. v. Okla. Gas & Elec. Co., 1973 OK 3505 P.2d 1324

¶49 When ascertaining the contracting parties' intent, the "rule . . . is settled that the conduct of the parties may be shown to establish the interpretation placed upon the contract by the parties themselves." Perry Journal Co. v. Shaw, 1951 OK 135231 P.2d 369the subsequent acts and conduct of the parties may be considered in arriving at the intention." Gillham v. Jenkins, 1952 OK 150244 P.2d 291

¶50 Consequently, the discussion during the hearing on Special Energy's motion to reconsider, concerning the execution date of the Assignment, was ineffective to contradict the statement on the face of that document that the Assignment was effective "June 1, 2015," more than two years before Special Energy filed this lawsuit. Special Energy has standing to enforce a breach of the Territory Confidentiality Agreement.

CONCLUSION

¶51 Special Energy acquired the Territory Confidentiality Agreement as part of its purchase of the Mississippi Lime Package assets from Devon in June of 2015. Special Energy had the right to enforce any breach of that Agreement at the time it filed this suit. Consequently, the defendants are not entitled to judgment at this point in the proceedings, and the district court's September 14, 2022 and March 24, 2023 Journal Entries are vacated. This case is remanded for further proceedings consistent with this Opinion.

¶52 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, C.J., and WISEMAN, P.J., concur.

FOOTNOTES

12 O.S.2021 § 2015

Evers v. FSF Overlake Assocs., 2003 OK 5377 P.3d 581

But cf., Skinner v. John Deer Ins. Co., 2000 OK 18998 P.2d 1219Skinner Court found no error in the denial of leave to amend because the amendment: (1) "was substantially the same as the initial response," (2) the district court "conducted the in camera review of the documents and found that they were privileged" before ruling on the motion, and (3) because the documents sought to be added to the record were privileged, "the plaintiff had no new evidence to submit." See Base v. Devon Energy Prod., 2024 OK 3

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105