2006 OK 43

William S. REEDS, Co–Guardian of the Estate of Phillip M. Reeds, and Ellen O. Reeds, Co–Guardian of the Estate of Phillip M. Reeds, and Phillip M. Reeds, Petitioners,

v.

The Honorable Thomas S. WALKER, Judge of the District Court, Carter County, Oklahoma, Respondent.

National American Insurance Company, Plaintiff/Appellee,

v.

William S. Reeds, Co–Guardian of the Estate of Phillip M. Reeds, and Ellen O. Reeds, Co–Guardian of the Estate of Phillip M. Reeds, and Phillip M. Reeds, Defendants/Appellants.

No. 101,994.

Supreme Court of Oklahoma.

June 20, 2006.

Rehearing Denied Oct. 3, 2006.

Dino E. Viera, Nicholas V. Merkley, and Kevin R. Donelson, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK; Stephen J. Adams, Fellers, Snider, Blankenship, Bailey & Tippens; and Stephen Q. Peters, Harris, McMahan, Peters, Thompson & Stall, PC, Tulsa, OK, Attorneys for Petitioners/Appellants.

Michael G. McAtee, McAtee & Woods, P.C., Oklahoma City, OK, Attorney for Respondent and for Appellee.[1]

OPALA, J.

¶ 1 The dispositive issues presented in these consolidated proceedings are: (1) Do Oklahoma courts have subject matter jurisdiction over an ERISA fiduciary's claim for damages for breach of the subrogation/reimbursement provision of an ERISA-regulated employee benefit plan? and if so, (2) Was plaintiff entitled to summary relief? We answer the first question in the affirmative and the second in the negative.

## I

### ANATOMY OF LITIGATION

¶ 2 Phillip M. Reeds (Phillip) was injured in August 1999 in an automobile accident that

---

1. Identified herein are (1) counsel for petitioners/appellants whose names appear on the paperwork filed in the appeal and in the original proceeding; (2) counsel for appellee whose name appears on the paperwork filed in the appeal; and (3) counsel for respondent judge whose name appears on the paperwork filed in the original proceeding.

was caused by a third party's negligence. At the time of the accident, Phillip was insured under a health insurance contract (the Plan) sold to his father's company by plaintiff, National American Insurance Company (NAICO). Phillip suffered extensive injuries in the accident and received medical benefits pursuant to the Plan in the amount of $454,407.94.

¶ 3 Phillip and his parents/guardians, William S. Reeds and Ellen O. Reeds (collectively "defendants" or "the Reeds"), sued the tortfeasor and their own automobile insurer. They settled with their own insurer for $2,250,000.00.[2] *The court order approving the settlement identified the sole source of these funds as the proceeds of the Reeds' own uninsured motorist (UM) benefits.* NAICO did not participate in, approve of, or consent to the settlement. Upon learning that the Reeds' claim had been settled, NAICO invoked the subrogation/reimbursement provision of the health insurance policy, demanding reimbursement from defendants of the medical expenses it had paid on Phillip's behalf. Defendants refused.

¶ 4 NAICO brought this action against defendants in the district court, Carter County, alleging breach of contract. Both sides moved for summary judgment. After consideration of the submitted materials, the trial court granted judgment to NAI-

CO, ordering defendants to pay damages in the amount of $454,407.94. Plaintiff's motion for prejudgment interest and costs was granted and defendants were ordered to pay the additional sum of $146,607.81. Defendants' postjudgment motion for a new trial[3] or for judgment notwithstanding the verdict and their postjudgment motion for dismissal[4] on the grounds that the trial court lacked subject matter jurisdiction were all denied.

¶ 5 Defendants appealed. The appeal, designated as Cause No. 101,678, was assigned to the Court of Civil Appeals in Oklahoma City. While the appeal was pending, defendants filed an application in this court, designated as Cause No. 101,994, invoking the court's original cognizance to direct the trial court not to implement or enforce the judgment and to dismiss the action for lack of subject matter jurisdiction. We agreed to assume original cognizance, withdrew the appeal's earlier assignment to the Court of Civil Appeals, and consolidated the two proceedings for disposition by a single opinion under surviving Cause No. 101,994.

¶ 6 Defendants argue in this consolidated proceeding that Oklahoma courts do not have subject matter jurisdiction over this action because federal law requires us to treat plaintiff's lawsuit as a federal ERISA claim over which the federal courts assert exclusive subject matter jurisdiction. They argue in

---

**2.** Defendants entered into a separate settlement with the tortfeasor and his liability insurer for $10,000.00.

**3.** Although summary judgment, which is a determination that there shall be no trial at all, is perhaps semantically inconsistent with the notion of a "new trial," it is nevertheless authorized by our statutory scheme for postjudgment relief as a motion for reconsideration of the judgment. The provisions of 12 O.S.2001 § 651 define a new trial as "a reexamination in the same court, of an issue of fact or of law or both, after a verdict by a jury, the approval of the report of a referee, or *a decision by the court.*" (emphasis added) Cf. *Lovejoy v. Stutsman*, 1915 OK 215, ¶ 3, 148 P. 175, 177 (holding that a motion for a new trial may be made following a judgment by default).

**4.** Postjudgment relief may not be secured by means of a motion to dismiss the judgment or order. This is so because by its adjudication a claim is transformed into an obligation called a "judgment," which, unlike a claim, cannot be "dismissed," but must be vacated. Oklahoma's

*nisi prius* practice and procedure authorize postjudgment relief by way of a motion for a new trial, *see* 12 O.S.2001 §§ 651–655, or by way of a motion to modify or vacate a judgment, *see* 12 O.S.2001 §§ 1031–1033. The dismissal motion in the instant case seeks in its concluding paragraph to procure the vacation of the judgment. A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, *may be* regarded as the functional equivalent of a new trial motion, no matter what its title. *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, ¶ 4, 681 P.2d 757, 758–59. The rule is permissive, not mandatory, and applies only if the substance and content of the motion contains indicia of a new trial motion. *Kerr v. Clary*, 2001 OK 90, ¶¶ 7–8, 37 P.3d 841, 843. Although defendants' post-trial motion to dismiss is not a statutorily authorized plea, it contains sufficient indicia of a motion to vacate the judgment to be treated as a motion for a new trial.

the alternative that should we determine that the Oklahoma courts have jurisdiction, we must reverse the judgment because (1) the trial court wrongly construed the words "third party" in the Plan's subrogation/reimbursement provision to include defendants' own "first party" UM carrier; and/or (2) the trial court erred in finding that the subrogation/reimbursement clause contains a "priority of payments" provision, thereby overriding the Oklahoma make-whole rule.

¶ 7 For the reasons to be explained below, we hold that Oklahoma courts have jurisdiction over this action, but that summary judgment was not plaintiff's due. We hence reverse the judgment and remand the cause with instructions to proceed in a manner consistent with this opinion.

## II

### STANDARD OF REVIEW

¶ 8 Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes [5]—is a search for undisputed material facts which,

*sans* forensic combat, may be utilized in the judicial decision-making process.[6] Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense.[7] Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.[8]

¶ 9 Summary relief issues stand before us for *de novo* review.[9] All facts and inferences must be viewed in the light most favorable to the non-movant.[10] Appellate tribunals bear the same affirmative duty as is borne by *nisi prius* courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant.[11] Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.[12] A trial court's denial of a

5. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Okla. Memorial Hosp.*, 1995 OK 112, ¶ 15, n. 35, 909 P.2d 765, 773, n. 35. *See also Seitsinger v. Dockum Pontiac, Inc.*, 1995 OK 29, ¶¶ 16–17, 894 P.2d 1077, 1080–81; *Davis v. Leitner*, 1989 OK 146, ¶ 15, 782 P.2d 924, 927.

6. The focus in summary process is not on the facts which might be proven at trial, but rather on whether the evidentiary material in the record tendered in support of summary adjudication reveals only undisputed material facts supporting but a single inference that favors the movant's quest for relief. *Polymer Fabricating, Inc. v. Employers Workers' Compensation Ass'n*, 1998 OK 113, ¶ 7, 980 P.2d 109, 112; *Hulsey v. Mid-America Preferred Ins. Co.*, 1989 OK 107, ¶ 8, n. 15, 777 P.2d 932, 936, n. 15.

7. To that end, the court may consider, in addition to the pleadings, items such as depositions, affidavits, admissions, answers to interrogatories, as well as other evidentiary materials which are offered in acceptable form without objection from other parties or are admitted over the challenging exception. *Polymer, supra* note 6, at ¶ 8, at 113; *Seitsinger supra* note 5 at ¶¶ 16–17, at 1080–81.

8. *Russell v. Bd. of County Comm'rs*, 1997 OK 80, ¶ 7, 952 P.2d 492, 497. *See also Gray v. Holman*, 1995 OK 118, ¶ 11, 909 P.2d 776, 781.

9. An order that grants summary relief, in whole or in part, disposes solely of law questions. It is reviewable by a *de novo* standard. *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321. *See also Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084 ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to re-examine a trial court's legal rulings.").

10. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053.

11. *Spirgis v. Circle K Stores, Inc.*, 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682, 685 (approved for publication by the Oklahoma Supreme Court).

12. It is not the purpose of summary process to substitute a trial by affidavit for one by jury. Rather, it is to afford a method of summarily terminating a case (or eliminating from trial some of its issues) when only questions of law remain. *State ex rel. Fent v. State ex rel. Okla. Water Resources Bd.*, 2003 OK 29, ¶ 14, n. 31, 66 P.3d 432, 440, n. 31; *Bowers v. Wimberly*, 1997 OK 24, ¶ 18, 933 P.2d 312, 316; *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

motion for new trial is reviewed for abuse of discretion.[13] Where, as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness.[14] Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.[15]

## III

## OKLAHOMA COURTS HAVE JURISDICTION OVER AN ERISA FIDUCIARY'S CLAIM FOR DAMAGES FOR BREACH OF AN ERISA–REGULATED HEALTH INSURANCE CONTRACT

▆ ¶ 10 Our initial task today calls for an inquiry into whether Oklahoma courts stand ousted by federal law of jurisdiction over a state-law contract action brought by an ERISA fiduciary against an ERISA beneficiary over the interpretation and application of an ERISA plan provision. When there are no contested jurisdictional facts,[16] the question of subject matter jurisdiction is

purely one of law which we review *de novo*.[17] Defendants argue that extant United States Supreme Court jurisprudence requires us to treat NAICO's state-law claim as a federal claim arising under ERISA over which the federal courts have federal question jurisdiction. Defendants further assert that the specific provision of ERISA under which NAICO's cause of action arises provides for *exclusive* federal jurisdiction, thereby ousting the state courts of jurisdiction. We disagree.

▆ ¶ 11 The state judiciary's subject matter jurisdiction is derived from the State Constitution which gives Oklahoma courts unlimited original jurisdiction over all justiciable matters unless otherwise provided by law.[18] State courts also have inherent authority to adjudicate claims arising under the laws of the United States,[19] unless Congress affirmatively assigns exclusive jurisdiction over a federal claim to the federal courts.[20] In contrast, the subject matter jurisdiction of the federal district courts is limited to that which is granted to them by Congress.[21] In the provisions of 28 U.S.C. § 1331, Congress has given the federal district courts subject matter jurisdiction over "all civil actions aris-

---

13. *Head v. McCracken*, 2004 OK 84, ¶ 2, 102 P.3d 670, 673; *Jones, Givens, Gotcher & Bogan, P.C. v. Berger*, 2002 OK 31, ¶ 5, 46 P.3d 698, 701.

14. *McCracken, supra* note 13; *Evers v. FSF Overlake Associates*, 2003 OK 53, ¶ 6, 77 P.3d 581, 584.

15. *Christian v. Gray*, 2003 OK 10, ¶ 43, 65 P.3d 591, 608; *Berger, supra* note 13.

16. Although the petition in this case does not allege facts that demonstrate federal jurisdiction, plaintiff admits that it is a fiduciary under the Plan. *See* 29 U.S.C. § 1002(21)(A). Plaintiff also admits that the insurance contract pursuant to which Phillip received benefits is governed by ERISA. Although jurisdictional facts cannot be removed entirely from judicial scrutiny, *see Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132, 134 (7th Cir.1996), and deficiencies in subject matter jurisdiction cannot be waived, *see In re A.N.O.*, 2004 OK 33, ¶ 9, 91 P.3d 646, 649, today's holding that plaintiff's quest for legal relief does not bring the case within exclusive federal question jurisdiction makes it unnecessary to decide whether all predicate jurisdictional facts for assertion of federal jurisdiction have actually been established.

17. *Booth v. McKnight*, 2003 OK 49, ¶ 12, 70 P.3d 855, 860.

18. The pertinent terms of the OKLA. CONST. Art. 7 § 7(a) are:

"* * * The District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, * * *" (emphasis added).

*See Holleyman v. Holleyman*, 2003 OK 48, ¶ 5, 78 P.3d 921, 929 (Opala, V.C.J., concurring); *Colton v. Huntleigh USA Corp.*, 2005 OK 46, ¶ 10, 121 P.3d 1070, 1073; *State ex rel. Southwestern Bell Telephone Co. v. Brown*, 1974 OK 19, ¶ 21, 519 P.2d 491, 495.

19. *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 823, 110 S.Ct. 1566, 1568, 108 L.Ed.2d 834 (1990).

20. *Id.*

21. U.S. CONST. Art. III, § 1. *Kontrick v. Ryan*, 540 U.S. 443, 452, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir.2006).

ing under the Constitution, laws, or treaties of the United States." [22]

¶ 12 Because they are courts of limited jurisdiction, federal courts presume jurisdiction is lacking absent an adequate showing by the party invoking it.[23] Whether an adequate showing of federal jurisdiction has been made is ordinarily subject to the well-pleaded complaint rule, which provides that "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." [24] Under the well-pleaded complaint rule, the face of the complaint must show "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." [25] Hence, the federal courts do not ordinarily have jurisdiction—original or removal—over an action in which the complaint presents only a state-law cause of action.[26] A plaintiff is the "master of his complaint" and can usually avoid federal jurisdiction by choosing not to plead an available federal claim and relying exclusively on state law.[27]

¶ 13 The United States Supreme Court has recognized a narrow exception to the well-pleaded complaint rule. That exception, known as the complete preemption doctrine, provides that *a strictly state-law claim presents a federal question if Congress intended for a specific federal statute to provide the exclusive cause of action, procedures, and remedies for that claim.*[28] The doctrine federalizes any claim that comes "within the scope" of one of these "powerfully preemptive" statutes even if the statute is

22. The provisions of 28 U.S.C. § 1331 state:
"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

23. *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir.1999).

24. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987); *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914) (stating that "whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute, ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.").

25. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The best-known definition of "arising under" jurisdiction is Justice Holmes' statement that "[a] suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). This longstanding formulation of federal question jurisdiction covers most cases, but not all. A case may also arise under federal law if a well-pleaded complaint establishes that the plaintiff's right to relief under state law requires resolution of a substantial question of federal law. *Franchise Tax Bd. of California, supra* at 13, 103 S.Ct. 2841; *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 2367, 162

L.Ed.2d 257 (2005). The existence of federal jurisdiction under both elements of the well-pleaded complaint rule depends on the particular claims a litigant makes in state court. *Pan American Petroleum Corp. v. Superior Ct. of Delaware*, 366 U.S. 656, 662, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). Leaving diversity jurisdiction aside, " 'a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action, * * * and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * *' " *Id.* at 663, 81 S.Ct. 1303, *quoting Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Plaintiff in the case under review did not plead a cause of action under ERISA and the petition, which pleads only a common-law contract action, discloses on its face no federal controversy.

26. Both original and removal jurisdiction are governed by the well-pleaded complaint rule. *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127, 94 S.Ct. 1002, 1003–04, 39 L.Ed.2d 209 (1974) (per curiam).

27. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

28. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9, n. 5, 123 S.Ct. 2058, 2063, n. 5 156 L.Ed.2d 1 (2003); *Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir.1999), *citing Metropolitan Life's Ins. Co., supra* note 24 at 63–64, 107 S.Ct. 1542 ("Where a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded.").

not explicitly cited in the plaintiff's complaint.[29]

¶ 14 Complete preemption is a rule of federal jurisdiction.[30] It permits removal to federal court of state-law claims *when a parallel federal cause of action exists which is intended by Congress to be exclusive.*[31] It is to be distinguished from ordinary (or defensive) preemption, which provides merely an affirmative federal defense to the application of state law.[32] As an affirmative defense which does not appear on the face of the complaint, ordinary preemption is precluded by the well-pleaded complaint rule from serving as a basis for removal.[33]

¶ 15 Defendants did not attempt to remove NAICO's claim to federal court based on the complete preemption doctrine. Rather, they argue that the state-court judgment is a nullity because complete preemption ousts the state court of subject matter jurisdiction over NAICO's state-law claim.[34] Because NAICO's petition states a claim solely under Oklahoma law, no federal question appears on the petition's face. The only source of federal question jurisdiction over plaintiff's claim lies with the complete preemption doctrine. The pivotal question we must answer then is whether NAICO's claim comes "within the scope" of an ERISA cause of action that commands complete preemptive power.

¶ 16 The causes of action available under ERISA are set out in nine civil enforcement provisions found at § 502(a), 29 U.S.C. § 1132(a). These provisions specify who may bring an action under ERISA and what relief is available to enforce, or obtain redress for violations of, ERISA or of benefit plans covered by ERISA. *A plan fiduciary is authorized by ERISA to bring a civil action only under the provisions of § 502(a)(3),* which state:

> "A civil action may be brought ... by a ... fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; ..."[35]

Under the terms of § 502(e)(1), *any claim brought under the provisions of § 502(a)(3) comes within the exclusive jurisdiction of the federal courts.*[36]

¶ 17 In *Metropolitan Life Insurance Company v. Taylor,*[37] the United States Supreme Court applied the complete preemption doctrine to ERISA. "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court."[38] Because *Metropolitan Life* in-

---

**29.** *Box Tree South, Ltd. v. Bitterman,* 873 F.Supp. 833, 839 (S.D.N.Y.1995).

**30.** *Lister v. Stark,* 890 F.2d 941, 944, n. 1 (7th Cir.1989). Some commentators consider the term complete preemption to be a misnomer and have suggested that it would be more appropriate to refer to the complete preemption doctrine as "jurisdictional preemption." *See* 15 James Wm. Moore et al., Moore's Federal Practice, ¶ 103.45[1] (3d ed.1999).

**31.** *Beneficial Nat'l Bank v. Anderson, supra* note 28 at 9, 123 S.Ct. 2058.

**32.** *See* 12 O.S.2001 § 2008(C); *DIRECTV, Inc. v. Barrett,* 311 F.Supp.2d 1143, 1147 (D.Kan.2004), *construing* Fed. Rule of Civil Procedure 8(c).

**33.** *Caterpillar Inc. v. Williams, supra* note 27 at 393, 107 S.Ct. 2425.

**34.** Although the complete preemption doctrine is ordinarily invoked to support removal of an action to federal court, *Biondo v. Life Ins. Co. of North America,* 116 F.Supp.2d 872, 878 (E.D.Mich.2000), we see no reason why it cannot be invoked in a state-court appellate proceeding to analyze federal question jurisdiction, which, if exclusive, would divest the state courts of subject matter jurisdiction.

**35.** *See* the provisions of 29 U.S.C. § 1132(a)(3).

**36.** The provisions of 29 U.S.C. § 1132(e)(1) state:

> "Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section."

**37.** *Supra* note 24.

**38.** *Id.* at 66, 107 S.Ct. 1542.

volved claims that came within the scope of § 502(a)(1)(B),[39] there has been some uncertainty as to whether the complete preemption doctrine applies to claims that come within the scope of other sections of ERISA's civil enforcement provision. **The Supreme Court has never expressly extended the complete preemption doctrine to fiduciary-brought state-law actions that come within the scope of § 502(a)(3).** Nevertheless, the broad language used by the Court in *Metropolitan Life* about the complete preemptive effect of ERISA's entire civil enforcement scheme has led several of the Federal Courts of Appeals and federal district courts to conclude that the complete preemption doctrine is applicable to claims arising under provisions of § 502(a) other than § 502(a)(1)(B).[40]

■ ¶ 18 These cases provide little in the way of evidence to support this conclusion beyond *Metropolitan Life's* expansive language. Complete preemption alters the well-established division of jurisdiction between the state and federal courts. Hence, only when Congress has shown an intent, not merely to preempt state law, but to transfer jurisdiction over a state-law claim to the federal courts does complete preemption apply. In *Metropolitan Life*, the Court found evidence of the requisite Congressional intent in large part in the legislative history of ERISA.[41] The Court cited the Conference

Report on ERISA, which declared that "suits to enforce benefit rights under the plan or to recover benefits under the plan, ... [§ 502(a)(1)(B) actions] 'are to be regarded as arising under the laws of the United States....' "[42] The Court then noted that "the rest of ... [ERISA's] legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction."[43] In this regard, the Court quoted a Senate sponsor of ERISA, who said that when participants and beneficiaries bring suit under ERISA to recover benefits denied contrary to the terms of the plan "[i]t is intended that such actions will be regarded as arising under the laws of the United States, ..."[44] Thus ERISA's legislative history provides ample evidence of Congressional intent to apply complete preemption to § 502(a)(1)(B) actions, but is silent as to actions under other sections of § 502(a).

¶ 19 Fortunately, we need not decide whether state-law actions that come within the scope of § 502(a)(3) are or are not completely preempted because, even if they are, it does not follow that NAICO's claim comes within that provision's scope. By its express terms, § 502(a)(3) authorizes suits for equitable relief only.[45] Construing this language in *Great–West Life Insurance Company v. Knudson*,[46] the United States Supreme

**39.** The provisions of § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), state:

"(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or beneficiary—
  \* \* \* \* \*
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; ..."

**40.** *See e.g. Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1216 (9th Cir. 2000), *amended on denial of reh'g.*, 208 F.3d 1170 (9th Cir.2000); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 677–79 (3rd Cir.2000); *Romney v. Lin*, 94 F.3d 74, 80–81 (2nd Cir.1996), *cert. denied*, 522 U.S. 906, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997); *Anderson v. Electronic Data Sys. Corp.*, 11 F.3d 1311, 1315 (5th Cir.1994), *cert. denied*, 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994); *Smith v. Provident Bank*, 170 F.3d 609, 613–14 (6th Cir.1999); *Kalo v. Moen*

*Inc.*, 93 F.Supp.2d 869, 872 (N.D.Ohio 2000); *C.C. Mid West, Inc. v. McDougall*, 990 F.Supp. 914, 920 (E.D.Mich.1998).

**41.** *See Metropolitan Life, supra* note 24 at 65–66, 107 S.Ct. 1542.

**42.** *Id., citing* H.R. Conf. Rep. No. 93–1280, p. 327, 1974 U.S.C.C.A.N. 5038, 5107, 1974 WL 11542.

**43.** *Metropolitan Life, supra* note 24 at 66, 107 S.Ct. 1542.

**44.** *Id.*

**45.** *See* the terms of § 502(a)(3), *supra* at text at note 35. *See also Mertens v. Hewitt Associates*, 508 U.S. 248, 256, 113 S.Ct. 2063, 2069, 124 L.Ed.2d 161 (1993).

**46.** 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

Court held that § 502(a)(3) does not "authorize" a claim for legal relief.[47] Because NAICO is seeking in this case quintessentially legal relief—to impose personal liability on defendants for money damages for breach of contract—its claim is clearly "not authorized" by the federal statute upon which defendants rely for complete preemption.[48]

¶ 20 It would be easy to jump directly from the words "not authorized" in *Knudson* to the conclusion that the Court intended to negate federal subject matter jurisdiction over claims seeking legal relief that would, but for the prayer for legal relief, fall within the scope of 502(a)(3). Indeed, a claim which seeks relief that is "not authorized" by ERISA's civil enforcement scheme may stand outside the jurisdiction of the federal courts, but that is not the only possible legal consequence of *Knudson's* holding. It is also possible that such a claim stands within the federal courts' jurisdiction, but fails to state a claim under federal law for which relief may be granted. Each of these interpretations of *Knudson* has its judicial adherents.[49] It is a question fraught with difficulties which only the nation's highest court can definitively answer. In the meantime, with federal jurisdiction uncertain, we decline to abdicate Oklahoma's cognizance over this state-law cause of action. The policy of the federal district courts in removal cases to remand to state court suits where federal question jurisdiction is doubtful provides some support for our decision.[50] Accordingly, we hold that Oklahoma courts have subject matter jurisdiction over an ERISA fiduciary's claim for legal relief. The trial court in this instance properly exercised jurisdiction and had the power to enter judgment.[51]

47. *Id.* at 221, 122 S.Ct. 708.

48. *Mertens, supra* note 45 at 255, 113 S.Ct. 2063 (stating that "[m]oney damages are, of course, the classic form of legal relief"). Our view of NAICO's claim as one seeking legal relief is supported by the Supreme Court's recent decision in *Sereboff v. Mid Atlantic Medical Services, Inc.,* —— U.S. ——, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006), in which the Court explained that in order for relief to be characterized as equitable for purposes of § 502(a)(3), both the basis of the plaintiff's claim and the nature of the recovery sought must be equitable. The Court in *Sereboff* held that the plaintiff's claim was one for equitable restitution because "it sought to impose a constructive trust or equitable lien on 'particular funds or property in the defendant's possession.'" *Id.* at ——, 126 S.Ct. 1869, 1874,. Nothing in the pleadings or arguments advanced in the instant case suggests that NAICO is seeking to impose a constructive trust or equitable lien on any identifiable or segregated funds in defendants' possession. Whether all, part, or none of the proceeds of the settlement remain in defendants' possession is unknown. Unlike the plaintiff in *Sereboff,* NAICO in this case is clearly seeking legal relief—to impose personal liability on defendants for money damages.

49. Holding that a claim, otherwise within the scope of § 502(a)(3) but for its quest for legal relief, stands outside the jurisdiction of the federal courts: *Hamrick's Inc. v. Roy,* 115 S.W.3d 468 (Tenn.App.2002); *Bauhaus USA, Inc. v. Copeland,* 292 F.3d 439 (5th Cir.2002); *FMC Medical Plan v. Owens,* 122 F.3d 1258 (9th Cir.1997); *Providence Health Plan v. McDowell,* 385 F.3d 1168 (9th Cir.2004). Holding to the contrary: *Primax Recoveries, Inc. v. Gunter,* 433 F.3d 515 (6 th Cir.2006); *Cement Masons Health & Welfare Trust Fund for Northern California v. Stone,* 197 F.3d 1003 (9th Cir.1999), *cert. denied,* 534 U.S. 1104, 122 S.Ct. 902, 151 L.Ed.2d 871 (2002); *Westaff (USA) Inc. v. Arce,* 298 F.3d 1164 (9th Cir.2002), *cert. denied,* 537 U.S. 1111, 123 S.Ct. 901, 154 L.Ed.2d 784 (2003); *Wausau Benefits, Inc. v. Liming,* 393 F.Supp.2d 713 (W.D.Wisc.2005); *Mid–Century Ins. Co. v. Menking,* 327 F.Supp.2d 1049, 1053 (D.Neb.2003) (dictum).

50. *Arnold v. Intervet, Inc.,* 305 F.Supp.2d 548, 550 (D.Md.2003); *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996) ("If there is any doubt as to the right of removal in the first instance, federal jurisdiction must be rejected. The Court strictly construes the removal statute, and must reject federal question jurisdiction if there is any doubt as to whether removal was proper."); *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 78 L.Ed. 1248 (1934) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir.1993) ("Any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction."); *Jenkins v. PBG Inc.,* 268 F.Supp.2d 593, 600 (D.Md.2003) (stating that where courts could disagree about whether claims are preempted, they should resolve "close calls" in favor of remanding the case to state court).

51. We note that neither party attempts to invoke the ordinary federal preemption provisions under ERISA in § 514(a) and (b), which were dealt with in *Hollaway, M.D. v. UNUM Life Insurance Company,* 2003 OK 90, 89 P.3d 1022. *Hollaway*

¶ 21 We are not unmindful of federal jurisprudence declaring the preeminence of federal authority in the area of employee benefit plan regulation. The United States Supreme Court has spoken of the centrality of the federal interest in ERISA,[52] of Congress' intent to provide a comprehensive statute for the regulation of employee benefit plans[53] and of § 502(a) as the embodiment of all remedies Congress intended to authorize for the enforcement of ERISA.[54] The sweeping nature of these statements is not enough to overcome the limited grant of jurisdiction contained in ERISA's § 502(f), which expressly states that the federal district courts shall have "jurisdiction ... to grant *the relief provided for* " in § 502(a).[55] (emphasis added) We must presume that Congress meant what it said in this section—that the federal district courts have *jurisdiction* to provide *the relief specified in § 502(a) and only that relief.*

¶ 22 We have also examined the Supreme Court's recent pronouncement in *Aetna Health Inc. v. Davila*,[56] in which the Court held that a state-law claim seeking a remedy in tort was completely preempted by § 502(a)(1)(B)[57] even if a tort claim is not contemplated by that section.[58] We do not believe that *Davila's* construction of § 502(a)(1)(B) is directly transferable to § 502(a)(3). The terms of § 502(a)(1)(B) provide a federal cause of action for the recovery of benefits wrongfully denied and define the cause of action in terms of the right violated. In contrast, the provisions of § 502(a)(3) define the cause of action in terms of the remedy that the plaintiff seeks. Unlike § 502(a)(1)(B), the remedy is built into the language and structure of § 502(a)(3), making it doubtful that any claim for unauthorized relief falls within that provision's scope.

does not address itself to a jurisdictional question akin to that with which we are dealing here. This is so because *Hollaway* addressed itself to recovery of benefits under an employee welfare benefit plan and a bad-faith action based on the recovery of those benefits. Because the action related to an employee benefit plan, and a bad-faith claim did not "regulate insurance" it was not saved from preemption in *Hollaway*. Here, liability is derived from a breach of the insurance policy and there is no need to inquire into the withholding of benefits, the medical services provided or the administration of the plan or its benefit structures. Section 514 is not implicated here because the defendant did not interpose federal preemption as a defense. Whether a reimbursement claim "relates to" an employee benefit plan remains an open question. *See Great–West Life Ins. Co. v. Knudson, supra* note 46; *AFL Hotel & Restaurant Workers Health & Welfare Trust Fund v. Bosque*, 110 Hawai'i 318, 132 P.3d 1229 (2006); *Providence Health Plan v. McDowell*, 385 F.3d 1168 (9th Cir.2004), *cert. denied* 544 U.S. 961, 125 S.Ct. 1735, 161 L.Ed.2d 602 (April 4, 2005).

**52.** *See e.g. Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (stating that Congress "meant to establish pension plan regulation as exclusively a federal concern").

**53.** *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).

**54.** *Mertens, supra* note 45, at 254, 113 S.Ct. 2063, *quoting Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–147, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (stating that ERISA's "carefully crafted and detailed enforcement scheme pro-

vides 'strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly' ").

**55.** The provisions of § 502(f), 29 U.S.C. § 1132(f), state:

"The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, *to grant the relief provided for in subsection (a) of this section* in any action." (emphasis added)

**56.** *Aetna Health Inc. v. Davila, supra* note 53.

**57.** The pertinent terms of § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provide:

"A civil action may be brought—
(1) by a participant or beneficiary—
* * * * *
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
..."

**58.** *Davila supra* note 53 at 214–16, 124 S.Ct. 2488. The Court stated:

"Nor can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism.... Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, ..." (emphasis added)

## IV

### DEFENDANTS' UM CARRIER IS A THIRD PARTY UNDER THE PLAN

¶ 23 We are asked on appeal to construe the language of the subrogation/reimbursement provision to determine whether NAICO may be reimbursed from proceeds obtained by its insured from the insured's own UM carrier.[59] The Plan provision in dispute states:

**Right to Subrogation**

When We pay benefits under the Plan and it is determined that **a third party is liable for the same expenses,** We have the right to subrogate from the monies payable from the third party equal to the amount We have paid for such benefits. **You must reimburse Us from any monies recovered form (sic) a third party as** a result of a judgment against or settlement with or otherwise paid by the third party. You must take action against the third party, furnish all the information and provide assistance to Us regarding the action taken, and execute and deliver all documents and information necessary for Us to enforce Our rights of subrogation. (emphasis added)[60]

¶ 24 Defendants argue that the words "third party" in the quoted provision do not include an injured insured's UM carrier. We disagree. The plain and ordinary meaning of the term "third party" is simply someone who is not a party to the health insurance contract. A UM carrier's "first party" status *vis a vis* its insured does not alter its third party status *vis a vis* the health insurance contract. Defendants would have us limit the words "third party" to the tortfeasor or

**59.** Although the Plan pursuant to which Phillip received benefits is an ERISA-regulated employee benefit plan, defendants did not interpose ERISA's ordinary preemption provision as an affirmative defense to plaintiff's claim. Under the provisions of ERISA § 514(a), 29 U.S.C. § 1144(a), with but a few exceptions, any state law relating to an ERISA plan is preempted (in the "choice of law" sense). Section 514(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title . . . .".

Federal preemption is an affirmative defense. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349 (2nd Cir.2003); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444 (1st Cir.1995); *Dueringer v. General Am. Life Ins. Co.*, 842 F.2d 127, 130 (5th Cir.1988); *Gilchrist v. Jim Slemons Imports, Inc.*, 803 F.2d 1488, 1497 (9th Cir.1986). Failure to plead an affirmative defense operates as a waiver. *Furr v. Thomas*, 1991 OK 93, ¶ 23, 817 P.2d 1268, 1272 (statute of limitations); *RST Serv. Manu. Inc. v. Musselwhite*, 1981 OK 45, ¶ 6, 628 P.2d 366, 368 (accord and satisfaction). Because defendants did not raise—and therefore waived—ERISA § 514(a) preemption, we apply state law to the resolution of this appeal.

**60.** Approximately three months after the accident, NAICO sent a letter to Phillip's father, asking that a "Subrogation Data Form" be executed. The first page states in part that Phillip "acknowledges the **rights of subrogation** in favor of National American Insurance Company . . .," and that he "voluntarily agrees to payment from first dollars by third parties in favor of and to National American under said rights of subrogation." The Reeds signed the document. Although both plaintiff and defendants refer to this instrument as a contract and rely on it in support of their respective interpretations of the subrogation/reimbursement provision, we do not consider it admissible evidence of the contract's meaning. Parties to an insurance policy stand in a contractual relationship to one another. *Silver v. Slusher*, 1988 OK 53, 770 P.2d 878, 883. Under the provisions of 15 O.S.2001 § 2, the essential elements of a contract are: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration. The modification of a policy of insurance must conform to the rules applicable to contracts. *Christian v. Metropolitan Life Ins. Co.*, 1977 OK 132, ¶ 15, 566 P.2d 445, 448. To the extent that the Subrogation Data Form purports to be either a new contract governing plaintiff's right to subrogation/reimbursement or a modification of the original insurance contract, it must meet the requirements for contract formation. Nothing in the record suggests that Phillip or his parents received anything in consideration for the execution of this document. Furthermore, because we do not view the subrogation/reimbursement provision of the insurance contract as ambiguous, we can not utilize the Subrogation Data Form as extrinsic evidence of the original contract's meaning. *Campbell v. Independent School Dist. No. 01 of Okmulgee County*, 2003 OK 73, ¶ 16, 77 P.3d 1034, 1039–40. The mere fact that the parties disagree or press for a different construction does not make an agreement ambiguous. *Pitco Production Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 14, 63 P.3d 541, 545.

the tortfeasor's insurer. Nothing in the contract itself justifies interjection of such a restriction. Defendants' reliance on *Provident Life & Accident Insurance Company v. Ridenour*[61] is misplaced. *Ridenour* turns on COCA's interpretation of the specific language used in the contract there at issue. That language is distinguishable from the language used in the subrogation/reimbursement provision of the Plan under review and does not support a general rule of law prohibiting subrogation or reimbursement from UM proceeds.

¶ 25 The Plan provides not only that the person or entity from whom reimbursement is sought must be a "third party," but that it must be a third party who is *"liable for the same expenses, . . ."* We hold that the defendants' UM carrier is a "third party liable for the same expenses." UM coverage is typically described as indemnity insurance because it pays the person who pays for the policy, but the UM insurer's obligation to pay anything at all depends on the liability of the uninsured or underinsured tortfeasor. Under our UM statute, once a vehicle is determined to be uninsured, the UM carrier becomes legally responsible—i.e. legally liable—to pay the insured for the same expenses the tortfeasor or the tortfeasor's liability insurer would be liable to pay were the tortfeasor not uninsured or underinsured.

## V

### THE PLAN DOES NOT CONTAIN A PRIORITY OF PAYMENTS PROVISION THAT OVERRIDES THE OKLAHOMA MAKE–WHOLE RULE

¶ 26 Defendants argue that even if their UM benefits are subject to the Plan's subrogation/reimbursement provision, the judgment must be reversed because the trial court erred in finding that the Plan contains a priority of payments provision that overrides the Oklahoma make-whole rule. They contend that in the absence of such a provision, NAICO may only obtain reimbursement if Phillip has been fully compensated for his damages. In light of this rule, defendants assert that summary judgment was inappropriate because plaintiff's evidentiary materials did not indisputably establish that Phillip has been fully compensated. We agree.

¶ 27 In *Equity Fire and Casualty Company v. Youngblood,*[62] we adopted the make-whole rule, which provides that an insurance contract that sets repayment priorities or otherwise gives the insurer the right to recoup payments before the beneficiary is paid will be enforced even if the injured person has not been fully compensated for his or her injuries.[63] Conversely, in the absence of a priority of payments provision, an insurer's right to reimbursement may only be enforced if and when the injured person has been fully compensated.

¶ 28 The plan language interpreted in *Youngblood* stated:

11.2 Reimbursement. When any Plan benefits are paid or provided for charges incurred by a Plan Member as a result of an Accidental Injury or Illness and *that Plan Member makes a recovery* (whether by settlement or judgment or otherwise) from any individual or organization equally or financially responsible for such Accidental Injury or Illness, then **the Plan shall have a lien upon any such recovery, and the Plan Member shall reimburse the Plan to the extent that benefits were paid hereunder;** provided, however, that the Committee, at its sole discretion, may permit the Plan Member to reimburse the Plan less than the full recovery amount received from such individual or organization. Nevertheless, in no event shall the

61. 1992 OK CIV APP 93, 838 P.2d 530.

62. 1996 OK 123, 927 P.2d 572.

63. *Id.* at ¶ 15, 576–77 (adopting "the make whole rule in contract subrogation and reimbursement cases where (1) the subrogation or reimbursement contract neither expressly sets priorities for the repayment of benefits, nor otherwise gives a right to subrogation or reimbursement before

any funds are paid to the beneficiary, nor vests the plan manager's (sic) discretionary authority to interpret ambiguous provisions of the plan; and (2) the compensation received by the beneficiary from settlement with or judgment against a third party represents less than full compensation. Under such circumstances, the subrogation and reimbursement terms of the contract will be unenforceable.").

Plan Member be required to make a reimbursement in an amount exceeding the recovery made by the Plan Member against such individual or organization.[64] (emphasis added)

We held that this provision did not establish a priority of payments or otherwise give the insurer a right to subrogation or reimbursement before the beneficiary was made whole.[65]

¶ 29 We have found only a few cases containing "genuinely unambiguous" reimbursement provisions.[66] In each such case, the contract contained an unmistakable declaration that the insurer's right to be reimbursed had priority over the insured's right to be made whole.[67] In addition, we disagreed in *Youngblood* with the Tenth Circuit's decision in *Fields v. Farmers Insurance Company, Inc.*[68] to enforce the following subrogation provision:

SUBROGATION RIGHTS

If you or your dependent sustain an injury caused by a third party, the Plan will pay for the injury, subject to (1) the Plan being subrogated to **any recovery** or **any right of recovery** you or your dependent has against that third party, including the right to bring suit in your name; (2) your not taking any action which would prejudice the Plan's subrogation right; and (3) your cooperating in doing what is reasonably necessary to assist the Plan in any recovery. The Plan will be subrogated

only to the extent of Plan benefits paid because of the injury. (emphasis added)[69]

We viewed this language as inadequate to establish the right of the insurer to recoup its payments before the insured was made whole.

¶ 30 Some courts have held that the word "any" or the words "any and all" are sufficient to give the insurer payment priority.[70] Others require a clearer expression of the intent to override the make-whole rule such as an express statement that (1) the make whole doctrine shall not apply; (2) the fund/plan has the right to recover any sums collected by a covered person even if the covered person has not been made whole; or (3) the fund/plan is entitled to reimbursement from any recovery even if the recovery does not fully compensate the covered person for her injury.[71]

¶ 31 Plaintiff argues that its policy contains an adequate expression of its reimbursement priority. Plaintiff cites the following clause in the Plan: "You must reimburse Us from *any* monies recovered...." We do not regard this as an adequate statement to override the protection afforded an injured insured by the Oklahoma make-whole rule. Following the reasoning in *Youngblood,* we hold that an insurance contract stands subject to the make-whole rule unless it contains an unequivocal, express statement that the insured does not have to be made whole before the insurer is entitled to recoup its payments.

64. *Id.* at ¶ 3, at 574.

65. *Id.* at ¶ 17, at 577.

66. *Id.* at ¶ 10, at 575.

67. *See e.g. Hershey v. Physicians Health Plan,* 498 N.W.2d 519, 520 (Minn.App.1993) (enforcing a plan provision that it "will be reimbursed from any other existing claims including any claim by you for general damages.... [The plan] may collect ... regardless of whether you have been fully compensated"); *Ryan v. Federal Express Corp.,* 78 F.3d 123 (3rd Cir.1996) (finding unambiguous a plan provision which provided that the plan shall "be reimbursed ... 100% of the amount of covered benefits paid," and "If you receive any payments from the third party, the Company expects 100% reimbursement for any plan benefits paid"); *Riley v. Herbes,* 524 N.W.2d 523 (Minn.App.1994) (enforcing a plan subroga-

tion provision providing that the plan "shall be paid ... before the payment of any recovery due from that party to the participant").

68. 18 F.3d 831 (10th Cir.1994).

69. *Youngblood, supra* note 62 at ¶ 9, n. 3, at 575, n. 3.

70. *See e.g. Great–West Life & Annuity Ins. Co. v. Clingenpeel,* 996 F.Supp. 1353 (W.D.Okla.1997); *Fields v. Farmers Ins. Co., Inc.,* 18 F.3d 831 (10th Cir.1994); *Cutting v. Jerome Foods, Inc.,* 993 F.2d 1293 (7th Cir.1993).

71. *King v. Pan American Life Ins. Co.,* 998 F.Supp. 1455 (N.D.Ga.1996); *Barnes v. Independent Auto. Dealers Ass'n,* 64 F.3d 1389, 1395 (9th Cir.1995); *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 38–9 (11th Cir.1989).

¶ 32 In the absence of a priority-of-payments provision in the Plan that meets the standard we have set today, plaintiff may only recover from defendants the benefits it paid on Phillip's behalf if Phillip has been fully compensated for his injuries. The burden is on the movant to establish that no genuine issue exists as to any material fact.[72] The opposing litigant must then identify those material facts he or she alleges remain in dispute and tender supportive evidentiary materials.[73] Having reviewed the evidentiary materials tendered to the trial court in this case, we conclude that they leave in dispute the issue of whether Phillip has been fully compensated for his injuries. On this state of the record, summary relief was not plaintiff's due. We hence remand this cause for further proceedings consistent with this opinion.

## VI

## AN AWARD OF PREJUDGMENT INTEREST AND COSTS RESTS UPON THE VIABILITY OF THE UNDERLYING JUDGMENT AND MUST BE VACATED UPON THE REVERSAL OF THAT JUDGMENT

¶ 33 Ancillary orders that are dependent upon the viability of an underlying judgment are nullified or affirmed on appeal by the disposition of the judgment on which they rest.[74] An award of prejudgment interest and costs constitutes dependent post-judgment relief and is inexorably tied to the fate of the judgment upon which it rests. Because we reverse the judgment in favor of appellee, we must also reverse the ancillary award of prejudgment interest and costs.

## VII

## SUMMARY

¶ 34 We decline to apply the complete pre-emption doctrine to recast today's claim as one arising under federal law. The law-equity dichotomy expressed in the text of § 502(a)(3) of ERISA as well as inconclusive U.S. Supreme Court jurisprudence leaves us in grave doubt that plaintiff's claim, which seeks a type of relief not authorized by ERISA, comes "within the scope" of an ERISA cause of action. We will not abdicate our own cognizance over a well-pled state-law claim without a clear directive from the U.S. Supreme Court that federal jurisdiction ousts our own. We nevertheless reverse the trial court's summary judgment for plaintiff because the trial judge erred in concluding as a matter of law that the health insurance contract contained a provision that clearly and unambiguously overrides the Oklahoma make-whole rule. The cause is remanded for further proceedings consistent with this opinion.

¶ 35 ORIGINAL JURISDICTION IS ASSUMED; WRIT OF MANDAMUS IS DENIED; THE TRIAL COURT'S SUMMARY JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS TO BE CONSISTENT WITH THIS OPINION.

¶ 36 WATT, C.J., and LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, and COLBERT, JJ., concur.

¶ 37 WINCHESTER, V.C.J., concurs in part and dissents in part.

¶ 38 TAYLOR, J., dissents.

¶ 39 TAYLOR, J., dissenting.

I respectfully dissent for the reason that the language, meaning and intent of the reimbursement terms of this insurance contract are clear and unambiguous. The trial court was correct in its decision.

---

**72.** *See Rules for the District Courts of Oklahoma,* Rule 13(a), 12 O.S. Supp.2002 Ch. 2., App.; *Wynn v. Avemco Ins. Co.,* 1998 OK 75, ¶ 7, 963 P.2d 572, 574.

**73.** *See Rules for the District Courts of Oklahoma,* Rule 13(b), 12 O.S. Supp.2002 Ch. 2: *Avemco, supra* note 72.

**74.** *Harkrider v. Posey,* 2000 OK 94, ¶ 25, 24 P.3d 821, 833; *Thompson v. Independent School Dist. No. 94 of Garfield County,* 1994 OK 139, ¶ 6, 886 P.2d 996, 998 (holding that an attorney's fee award was "automatically vacated once the underlying judgment upon which it was based was reversed").