2011 OK CIV APP 56

**BANK OF OKLAHOMA, N.A., a national banking association, Plaintiff/Appellant,**

v.

**PRICEWATERHOUSECOOPERS, L.L.P., a foreign limited liability partnership, Defendant/Appellee.**

**No. 108,035.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 8, 2011.

Certiorari Denied April 18, 2011.

---

Paul Demur, J. Michael Medina, Dustin J. Vanderhoof, Frederic Dard Lawyers, Tulsa, Oklahoma, for Appellant.

Mary Quinn Cooper, Thomas E. Stenches, Michael F. Smith, Eldridge Cooper Stenches & Leach, P.L.L.C., Tulsa, Oklahoma, for Appellee.

LARRY JOPLIN, Judge.

¶ 1 Plaintiff/Appellant Bank of Oklahoma, N.A. (BOK), a national banking association, seeks review of the trial court's order granting the motion for summary judgment of Defendant/Appellee PriceWaterhouseCoopers, L.L.P., a foreign limited liability partnership (PWC), on BOK's claim of professional negligence. In this accelerated review proceeding, BOK challenges the trial court's order as affected by errors of both fact and law.

¶ 2 Initiating a business plan to entice Great Plains Airlines, Inc. (Great Plains) to establish a Tulsa facility, on November 30, 2000, the City of Tulsa and the Tulsa Industrial Authority (TIA) entered into a Memorandum of Understanding. Pursuant to the understanding, City would convey to TIA certain property known as Air Force Plant 3, TIA would mortgage the property, and then, in turn, TIA would make a loan to Great Plains to establish its Tulsa facility. Also as

part of the understanding, the Tulsa Airport Improvements Trust (TAIT) would enter a contingent support agreement, by which the TAIT agreed to buy the property on the occurrence of one or more "triggering" events, including, e.g.; Great Plains' default.

¶ 3 On December 21, 2000, the parties consummated the agreement. The City conveyed the property to TIA, BOK loaned $30 million to TIA, TIA loaned the $30 million to Great Plains, and TIA assigned the loan to BOK. TIA, TAIT and BOK executed the Support Agreement, by which TIA was granted the right to demand that TAIT purchase the property and the Great Plains loan for the amount of any remaining indebtedness upon the occurrence of one or more triggering events.

¶ 4 TAIT obtained an annual audit to comply with its bond indentures, as well as state and federal law. For the years 1999 and 2000–2004, PWC conducted audits of TAIT's financial affairs and prepared financial statements reflecting TAIT's ownership of unrestricted assets valued at between $1.8 million and $4.2 million. According to BOK, it relied on these financial statements in making the loan to TIA and Great Plains, in disbursing cash collateral and in delaying collection efforts. PWC asserted that it was never told its audits would be used or relied on for purposes of the TIA–TAIT Support Agreement.

¶ 5 On March 21, 2004, Great Plains defaulted on the loan, and BOK declared occurrence of an event triggering TAIT's obligation to buy on June 22, 2004. On or about July 14, 2004, TIA wrote TAIT demanding purchase of the property and loan, with closing to occur July 22, 2004, but TAIT did not appear at closing.

¶ 6 TIA then sued City and TAIT. Judgment was granted for about $7.1 million, the balance due and the full amount of the principal indebtedness. City paid BOK the judgment.

¶ 7 On August 7, 2006, BOK then commenced the instant action, and sought recovery of the "benefit of its bargain," i.e., interest due on the mortgage, and attorney's fees from PWC. BOK alleged PWC's profession-al negligence in preparing TAIT's financial statements of unrestricted assets, when, in fact, the assets were restricted assets, and BOK's reliance on the statements of unrestricted assets when it made the loan to TIA and Great Plains.

¶ 8 PWC filed its motion for summary judgment. To its motion, PWC attached evidentiary materials showing the facts we have recounted. PWC argued that the evidentiary materials demonstrated that BOK's claims were barred by the two year statute of limitations, that it owed no duty to BOK, and that BOK had suffered no recoverable damages.

¶ 9 BOK responded. BOK argued that it timely commenced the instant action within two years of accrual of the claim, and that PWC knew BOK would rely on its financial statements in banking the loan to Great Plains; at a minimum, BOK said, there were material facts in controversy on both issues as to preclude summary adjudication of the claims and defenses. BOK also argued that its was entitled to recover the full benefit of its bargain, including interest on the mortgage and attorney's fees.

¶ 10 Upon consideration of the parties' arguments and submissions, the trial court held for PWC:

The gravamen of BOK's professional negligence claim against PWC is that BOK relied on TAIT's financial statements audited by PWC in making the Great Plains Loan. . . . Pursuant to the Support Agreement Section 5(d), BOK scheduled the closing for the sale of the property for July 22nd, 2004. TAIT did not appear for closing on July 22nd, 2004 and failed to purchase TIA's property pursuant to the Support Agreement. On July 22nd, 2004, therefore, at the latest, TAIT breached the Support Agreement and BOK knew and understood TAIT would not perform according to the Support Agreement. Pursuant to the Support Agreement, TAIT was obligated to pay BOK in full on July 22nd, 2004. On July 22nd, 2004, BOK knew it suffered an identifiable loss or injury as a result of the breach of the Great Plains Loan and Support Agreement.

. . . .

The Court concludes that BOK's negligence claims against PWC are barred by the statute of limitations.

. . . .

. . . . BOK admits PWC had no knowledge of the Great Plains transaction before it was consummated and BOK admits there are no facts that demonstrated that PWC knew that TAIT, the recipient of the information, intended to provide that information to BOK. . . . BOK's allegation that PWC should reasonably have anticipated that TAIT would deliver the audited financial statements to banks and other lenders and that somehow other lenders would rely upon such statements does not create a duty of PWC to a third party under Oklahoma law.

The Court concludes PWC owed no duty to BOK under the facts and circumstances of this case.

It is unnecessary for the Court to rule on Proposition 3 of PWC's Motion For Summary Judgment; therefore, the Court declines to do so.

BOK appeals, and the matter stands submitted on the trial court record.[1]

¶ 11 "Summary relief issues stand before us for *de novo* review[,] [and] [a]ll facts and inferences must be viewed in the light most favorable to the non-movant." *Reeds v. Walker,* 2006 OK 43, ¶ 9, 157 P.3d 100, 106–107. (Footnotes omitted.) (Emphasis original.) "Summary judgment will be affirmed only if the appellate court determines that there is no dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Lowery v. Echostar Satellite Corp.,* 2007 OK 38, ¶ 11, 160 P.3d 959, 963–964. (Citations omitted.) "Summary judgment will be reversed if the appellate court determines that reasonable men might reach different conclusions from the undisputed material facts." *Id.*

■ ¶ 12 As between an accountant and client, "[t]o establish a prima facie case of negligence [the client] must prove: (1) that [the accountant] owed a duty of care—arising from its rendition of professional accounting services—to the [client], (2) that the duty was breached, and (3) that injury and the resultant damages were directly the result of [the accountant's] failure to perform its duty." *Stroud v. Arthur Andersen & Co.,* 2001 OK 76, ¶ 13, 37 P.3d 783, 788. (Footnotes omitted.) However, "[o]n the issue of third-party reliance on audited financial statements the common-law principle embraced in the Rest. (Second) of Torts § 552 is determinative." *Stroud,* 2001 OK 76, ¶ 34, 37 P.3d at 794. That section provides:

One who, in the course of his . . . profession . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. . . .

*Id.*

■ ¶ 13 "Under the Restatement test an auditor would be liable to a limited group of people embracing (1) those for whose guidance the auditor intended to supply the audit data and (2) those to whom the auditor knows his client intended to supply the audited financial statements." *Stroud,* 2001 OK 76, ¶ 34, 37 P.3d at 794. (Footnotes omitted.) "It is not enough that the [accountant] merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it, on the part of anyone to whom it may be repeated." Rest. (Second) of Torts § 552, comment h. Indeed, under facts virtually indistinguishable from the present case, the Restatement rule imposes no liability on the accountant:

A, an independent public accountant, is retained by B Company to conduct an annual audit of the customary scope for the corporation and to furnish his opinion on the corporation's financial statements. A is not informed of any intended use of the financial statements; but A knows that the financial statements, accompanied by an auditor's opinion, are customarily used

---

1. See, Rule 13(h), Rules for District Courts, 12 O.S. Supp.2002, Ch. 2, App.; Okla. Sup.Ct. Rule 1.36, 12 O.S. Supp.2003, Ch. 15, App. 1.

in a wide variety of financial transactions by the corporation and that they may be relied upon by lenders, investors, shareholders, creditors, purchasers and the like, in numerous possible kinds of transactions. In fact B Company uses the financial statements and accompanying auditor's opinion to obtain a loan from X Bank. Because of A's negligence, he issues an unqualifiedly favorable opinion upon a balance sheet that materially misstates the financial position of B Company, and through reliance upon it X Bank suffers pecuniary loss. *A is not liable to X Bank.*

Rest. (Second) of Torts § 552, comment h, illus. 10.

■ ¶ 14 In the present case, PWC prepared annual audits for TAIT, and, indeed, may have known that its audits would be used by TAIT in a wide variety of financial transactions. However, PWC was never informed that BOK would rely on its audits in funding the TIA–TAIT loan, and the fact that PWC may have appreciated "ever-present possibility of repetition to anyone, and the possibility of action in reliance upon it" does not give rise to liability.

■ ¶ 15 Furthermore, a claim of professional negligence sounds in tort, and is governed by the two year statute of limitations, 12 O.S. § 95(3). *Funnell v. Jones,* 1985 OK 73, ¶ 6, 737 P.2d 105, 107. The " 'limitations period of 95(3) begins to run from the date the negligent act occurred or from the date the plaintiff should have known of the act complained of.' " *Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.,* 1995 OK 66, ¶ 6, 899 P.2d 621, 623. (Citation omitted.)

■ ¶ 16 In the present case, BOK knew TAIT breached its purchase obligation under the Support Agreement on July 22, 2004 when TAIT failed to close. BOK commenced the instant action August 7, 2006, more than two years later. BOK's claim is barred by the two year statute of limitations.

¶ 17 The order of the trial court is AFFIRMED.

MITCHELL, P.J., and BUETTNER, J., concur.